Defendant, Maison Blanche Company, operates a large department store in New Orleans, and for the purpose of carrying customers from the first floor to the second, and from the second to the third, operates, in addition to numerous elevators, a mechanical device, known as an escalator, which is a moving stairway, the motive power of which is an electric motor.
Mrs. Earl A. Vallette, on the afternoon of December 8th, 1944, entered the store with her daughter, now Mrs. Morris O'Hern, and a three year old nephew. Mrs. Vallette decided that it would give a thrill to her little nephew to ride on the escalator from the first floor to the second, so she entered it herself, and a few steps behind her, her nephew took his stand on one of the steps and just behind the child, Mrs. O'Hern took her position on another of the steps. When Mrs. Vallette reached a point variously estimated at from a few feet above the first floor to half way to the second floor, she lost her balance and fell to the moving steps of the escalator on one of which steps she had been standing.
She sustained physical injuries and brings this suit against the Maison Blanche Company for $14,000, alleging that her fall was caused by a sudden jolt or jerk of the escalator and that her injuries were aggravated by the negligence of the attendant or guard, a young woman employee of defendant, who, she charges, became excited and failed to press the emergency button to stop the operation of the machine until plaintiff had been carried by the escalator all the way to the second floor. She alleges also that when the upward motion of the escalator was stopped, just as she reached the second floor, her body began to slip down, bumping on each step, and that she thus slipped all the way to the ground floor and reached it in a most embarrassing position, with her clothes thrown over her head. She expressly alleges that the doctrine "res ipsa loquitur" is applicable, and she maintains that if defendant is to escape liability, it must, because of that doctrine, bear the burden of proving that there was no defect in the escalator or in its operation, and no negligence on the part of any of defendant's employees.
Mr. Vallette, also plaintiff, alleges that as a result of the accident he sustained damage in the sum of $475.00. He alleges that certain of Mrs. Vallette's clothing was damaged and that he was forced to expend a large portion of that amount to defray the cost of doctor's bills, drugs, medicines, etc.
Defendant admits that Mrs. Vallette entered the escalator as she alleges and that she fell while she was on her way to the second floor of the store, but it "specifically and especially denies that said escalator gave a sudden, unexpected, violent and unusual jerk." It also denies that *Page 530 
there was any negligence on the part of any of its employees, and especially denies that the employee stationed at the entrance of the escalator became panicky or excited, and it avers that, on the contrary, the said employee "immediately stopped said escalator when she saw or heard petitioner fall * * *." It also made the following allegations with reference to the condition of the escalator:
"The escalator operated by it in its store is the usual and standard escalator equipment that is used and found in similar department stores; that it maintains said escalator in perfect running order and condition at all times, and that said escalator is inspected and tested at various intervals; that said escalator on December 8, 1944, was in perfect running order and condition, and that thousands of people ride said escalator daily, and that thousands used the escalator on the date of said accident without anyone getting hurt."
Defendant further specifically avers that the said accident was caused "solely and only by negligence or want of care on the part of petitioner" and also "that petitioner's fall was either due to her attempting to watch her said nephew or that said nephew tugged on her dress in order to hold on, causing petitioner to fall."
In the District Court there was judgment against defendant and in favor of Mrs. Vallette for $3500 and in favor of Mr. Vallette for $175. Defendant has appealed and both plaintiffs have answered the appeal, Mrs. Vallette asking that the amount of the award in her favor be increased to $14,000, and Mr. Vallette praying that the amount of the award in his favor be increased to $475.
The record shows what undoubtedly is already well known, i. e., that an escalator is a moving stairway, on each side of which there is a completely enclosed rail about 3 1/2 feet high and that the stairway itself is about 18 inches in width. Between these side rails the steps are moved by a hidden mechanism consisting of an electric motor which operates a worm gear so that the motion is continuous in that it does not stop to take on or let off passengers as does an elevator. Each passenger steps from the stationary floor to one of the steps which is moving upward and remains standing on the moving step until that step has reached the floor above. The passenger then steps from the moving step to the stationary floor and the journey from the lower floor to the upper floor is thus completed.
We think that while there is no jurisprudence in this state on the subject, an escalator may be likened in many respects to an elevator. We agree with what was said in Petrie v. Kaufmann Baer Co., 291 Pa. 221, 139 A. 878, 879:
"As an escalator and an elevator perform the like service of conveying people from one elevation to another, they are subject to like duties and responsibilities. The passenger is at least as powerless to influence the action of the former as the latter."
[1] While we cannot agree with counsel for plaintiff, that a store which operates an elevator in which persons desiring to trade in the store are carried up and down, is to be classified as a common carrier, it is settled in Louisiana that the operator of such an elevator is under obligations similar in many respects to those imposed by law upon common carriers. In Ross et al. v. Sisters of Charity of Incarnate Word,141 La. 601, 75 So. 425, L.R.A. 1917F, 260, the Supreme Court said:
"While the owner of a passenger elevator operated in a business building for carrying passengers up and down may not be a carrier of passengers in the sense that he is bound to serve the public, yet his duty as to protecting the passengers in his elevator from danger is the same as that applicable for the carrier of passengers by other means, and he is bound to do all that human care, vigilance, and foresight can reasonably suggest under the circumstances, and, in view of the character of the mode of conveyance adopted, to guard against accidents and injuries resulting therefrom; and a failure in this respect will constitute negligence rendering him liable. He owes the same duty to those who by invitation, express or implied, are transported in the cars of such elevator, to exercise the highest care, in view of the *Page 531 
character of the mode of conveyance adopted, as to the safety of the car and all appliances. * * *"
[2, 3] Therefore, since an escalator is to be likened to an elevator and since the operator of an elevator is under obligations similar to those imposed by law upon common carriers, and since too it is plain that a patron of a store can have no knowledge as to the cause of a sudden jolt in the operation of an escalator, we think that the doctrine of "res ipsa loquitur" is applicable to a case such as this. In the oft cited case of Lykiardopoulo v. New Orleans C. R., Light 
Power Co., 127 La. 309, 53 So. 575, 576, Ann.Cas.1912A, 976, the Supreme Court said:
"* * * In cases where the plaintiff cannot be expected to have any information as to the causes of the accident, whereas the defendant, on the contrary, must be assumed to be fully informed on the subject, and where the accident is of the kind which ordinarily do not occur when due care has been exercised, the rule of evidence is that the accident speaks for itself — res ipsa loquitur — that is to say, that a presumption of negligence arises from the fact itself of the accident. In such cases, the plaintiff not only need not allege the particular acts of omission or commission from which the accident has resulted, but need not even prove them. The accident itself makes out a prima facie case, and the burden is on defendant to show absence of negligence. Res ipsa loquitur. * * *"
Where that doctrine is applicable, a plaintiff is relieved from the necessity of proving anything more than that an unusual occurrence took place and that injury resulted. Upon the production of such proof, the burden shifts to the defendant who is then under the necessity of proving that, though there was an unusual occurrence, and that though injury resulted, there was no fault on its part. We said in Horrell v. Gulf Valley Cotton Oil Co., 15 La. App. 603, 131 So. 709, 715:
"* * * the burden is on defendant to show by a preponderance of the evidence that there was no negligence on its part * * *".
But even where the doctrine of res ipsa loquitur is to be applied there must first be proof of an unusual occurrence such as a jolt or a jar. It is true that the plaintiff need not show the cause of the jolt but she must show more than merely that she fell while being transported. She must show that her fall was caused by a jolt.
[4] In spite of the finding below that there was such a jolt we are unable to agree that the record shows that such a jolt occurred.
Our examination of the photographs of the escalator and a study of its dimensions together with a realization of certain undisputed facts convinces us beyond any doubt that Mrs. Vallette was not carried to the top of the moving stairway, and that she did not then slide down from the second to the first floor. The version of Miss Hynes, the guard stationed at the foot of the escalator, is that Mrs. Vallette was not carried up but merely fell in the escalator without any apparent cause therefor. Most convincing to us that there was no such jolt as Mrs. Vallette describes, is the fact that just after the alleged occurrence, she completely failed to state that there was any such jolt. In a signed statement she said:
"I had my shopping bag in my left hand and was holding on to the rail with my right hand and don't know what caused me to fall backward unless it is because it seemed to be going faster than usual."
She stated too that she had fallen upon her nephew's leg. Mrs. Vallette admitted giving this statement and testified that everything in it was true except that on the witness stand she said that she had not fallen on her nephew's leg.
On two other occasions, immediately after the accident, Mrs. Vallette said that she did not know what had caused her to fall. She made this statement to Miss Hynes in charge of the escalator and a little later to Miss McCaffery, a nurse and investigator of the defendant company. It seems to us strange that on the day of the accident Mrs. Vallette, to two different people, said that she did not know what caused her to fall, and then a month later signed a written statement in which she again said *Page 532 
she did not know the cause of the fall, and that yet when she filed a suit, a full year after the accident, and testified still later, she was positive that there had been a violent and severe jerk in the escalator.
Miss Hynes stated that there was no such jerk, that the escalator operated smoothly before and after the accident and that there was nothing unusual about its operation at that time.
The testimony of Miss Hynes is attacked by counsel for plaintiff who vehemently declares that she was nervous and unstrung, and proved herself to be totally unfit to occupy such a position. A careful study of the testimony of Miss Hynes convinces us to the contrary. It is true that she shed a few tears while on the witness stand but we see nothing particularly unusual in that. Her testimony as to what happened on the day of the accident is clear and convincing.
The proof shows beyond any possible doubt that the escalator had been examined by competent employees of the Otis Elevator Company regularly and that the last examination had been made on the day before the accident, and that after the accident it was inspected regularly each week. The reports on these inspections show that there was nothing whatever the matter with it, that no repairs were made and that it continued, as it always had, to operate smoothly and without any evidence of defect.
The experts who examined the escalator and who testified as to its construction stated that they did not see how it was possible for it to jerk; though at least one of them admitted, of course, that any machinery may get out of order and, on occasion, may give trouble.
We feel certain from the record before us that there is no satisfactory proof that the escalator jerked or jolted at the time of Mrs. Vallette's fall. As a matter of fact, the record shows that for sometime she had been under the care of her physician, Dr. Louis Levy, and that she had been in a very nervous condition prior to the accident. It seems probable that her physical and nervous condition, and the fact that she was accompanied by a young child, may have had something to do with her losing her balance.
Much is made over the fact that there were no signs posted near the entrance of the escalator to warn patrons of the store that they must be careful not to lose their balance and also it is said that Miss Hynes should have given personal warning to Mrs. Vallette to be careful in stepping on the escalator. It is shown that Mrs. Vallete was quite familiar with the escalator and if there was any slight danger attendant upon it, she was well aware of such danger. She states that she stepped upon it and grasped the rail. This indicates that she knew that there was a slight possibility of her being thrown off balance when she stepped upon it. We think that the truth of the matter is that she merely lost her balance without any other cause than possibly her own physical and nervous condition.
The judgment appealed from is annulled, avoided and reversed, and the suit of plaintiffs is dismissed at their cost.
Reversed.