274 So.2d 799 (1973)
Edward R. CANNON, Individually and as Administrator of the Estate of Mary Ann Cannon
v.
D. H. HOLMES, LTD. and Aetna Insurance Company.
No. 5263.
Court of Appeal of Louisiana, Fourth Circuit.
March 13, 1973.
Rehearing Denied April 3, 1973.
Writ Refused May 24, 1973.
*800 Tucker & Schonekas, Charles A. O'Niell, Jr., New Orleans, for plaintiff-appellant.
Lemle, Kelleher, Kohlmeyer, Matthews & Schumacher, Paul B. Deal, New Orleans, for defendants-appellees.
Drury, Lozes & Curry, James H. Drury, Madison C. Moseley, New Orleans, for third-party defendant-appellee.
Before SAMUEL, GULOTTA, and SCHOTT, JJ.
GULOTTA, Judge.
This is a suit brought by Edward R. Cannon individually and on behalf of his minor daughter, Mary Ann Cannon, against D. H. Holmes and its insurer, Aetna Insurance Company, for injuries sustained by plaintiff's daughter as a result of an accident while riding an escalator in the Holmes department store. Defendant, Holmes, denied any negligence and affirmatively pleaded the contributory negligence of Mary Ann. Additionally, Holmes and its insurer filed a third-party demand for indemnity or contribution against Otis Elevator Company, the designer and installer of the escalator. Upon plaintiff's appeal, the defendants-appellants, D. H. Holmes and Aetna Insurance Company, filed a protective appeal of the dismissal of their third-party demand against Otis Elevator Company.
There is no material factual dispute.
On July 9, 1968 Mary Ann Cannon, age 12, accompanied by three female contemporaries, entered the Holmes downtown store for the purpose of having lunch and shopping. As they were descending the escalator, one of the children called the others attention to a sign which could be seen on a display to the left. Mary Ann, who was standing on the right side of the escalator with her right hand resting on the right rail, turned suddenly to see the display. In doing so, she positioned her right elbow in front of her body, leaving her hand on the rail. The result was that as the escalator descended, plaintiff's arm became wedged between the wall, nine inches from the handrail, causing plaintiff's right wrist to break.
It is plaintiff's contention that there was a defect in the design of the escalator in that the handrail was placed only nine inches from the wall. They argue that had the handrail been placed eighteen inches, or more than nine inches, from the wall, the accident could not have happened. Therefore, according to plaintiff, Holmes was negligent in allowing its escalator to be so designed and constructed. Plaintiff further finds fault by the failure of Holmes to post danger warning signs. These signs, they insist, would prevent accidents involving younger children.
In examining the question of negligence, let us first ascertain the duty imposed upon Holmes to its customers. Plaintiff argues that according to Vallette v. Maison Blanche Co., 29 So.2d 528 (La.Orl.App. 1947), the duty of one who has an escalator on his premises is similar to the duty placed upon a common carrier, i. e., the highest degree of care resulting in an inference of negligence being created when an accident occurs wherein the burden shifts to the common carrier to exculpate himself.[1]
*801 Vallette went on to say, however, that in an escalator case plaintiff must show in addition to the injury the existence of an unusual occurrence such as a jolt or jar or malfunction. On page 531, the court stated:
"But even where the doctrine of res ipsa loquitur is to be applied there must first be proof of an unusual occurrence such as a jolt or a jar."
In the instant case, there was no proof of any unusual occurrence or other defect in the mechanism or operation of the escalator. Plaintiff in her own testimony at trial admits that the escalator did not malfunction.
"Q. Did the escalator operate to carry traffic in a downward direction at the time of your accident in a smooth flow? That is, it didn't jerk and knock you off balance or anything like that?
"A. No, Sir."
Thus, while the standard in escalator cases is similar to that of a common carrier, it is modified by the foregoing principle of the Vallette case and therefore, in the instant case no inference of negligence was created which would require the defendant to exculpate himself. Furthermore, it is well settled that a common carrier is not the insurer of the safety of its passengers. Schenker v. Randle, 209 So.2d 327 (La.App. 4th Cir. 1968).
However, plaintiff argues that an inference of negligence is created because of the hazardous design and construction of the escalator. He insists that the nine inch "deck"[2] between the wall and the handrail constitutes a hazard in itself. Cannon supports this contention with the testimony of Joseph J. Quartano, a mechanical engineer. However, it is significant that Quartano had never worked with escalators nor designed, installed or had any particular experience with escalators. This witness conceded, under cross examination, that if one is descending this escalator and is paying reasonable attention to what he is doing, he would not injure himself as did Mary Ann.
On the other hand, Earl DeMarcy, an expert[3] in the installation and maintenance of escalators, with 33 years of experience with Otis Elevator, answered affirmatively when asked under cross examination if the escalator in question was "normal, sound, and non-hazardous" when installed. Moreover, there is no difference in clearance and spacing between the instant escalator in Holmes and those in other stores in New Orleans. He added there are approximately 36 to 40 Otis escalators in the City of New Orleans. Some of these are placed side by side thereby having an eighteen-inch decking, while others crisscross, as in this case. In this latter group, there is a nine-inch deck between the handrail and the wall.
Assuming, however, that wider decking between the wall and handrail would have prevented the accident, we cannot conclude that failure to construct an escalator so designed constitutes negligence on the part of the defendant. The court in the Vallette case on page 530 of 29 So.2d stated:
"* * * his duty as to protecting the passengers in his elevator from danger is the same as that applicable for the carrier of passengers by other means, and he is bound to do all that human care, vigilance, and foresight can reasonably suggest under the circumstances, * * *" (emphasis ours)
There is nothing in this record to suggest anything but that Mary Ann's was a freak accident resulting from the combination *802 of the design of the escalator and highly unusual position into which she placed her arm prior to the accident. It does not appear that such could be anticipated by defendant even with the exercise of all human care, vigilance and foresight reasonably suggested under the circumstances.
Nevertheless, plaintiff suggests were a "wedge guard" installed on the descending escalator, such device might have prevented Mary Ann's accident. This contention is speculative. We fail to find testimony which suggests the installation of a wedge guard on the descending side could have prevented the accident. DeMarcy's statement, in this respect, is that a "pinching hazard" was not created on the descending escalator; therefore, there was no need for the installation of a wedge guard.[4]
Plaintiffs also attempt to establish that because this escalator was installed in D. H. Holmes in 1947, it is defective in design by today's standards. They hint that later models are safer in design. A similar charge was made in Theard v. Travelers Insurance Company, 208 So.2d 413 (La. App. 4th Cir. 1968). In that case, the court stated at page 417:
"Counsel for plaintiffs point to the fact that the escalator in question had been erected in 1948 and that newer models have been developed since and that therefore it must be assumed that there were defects in the older models and that it was such a defect which caused this accident.
"If there had been any unusual occurrence such as a sudden stop or a jolt or a sudden increase in speed it would not have been difficult to ascribe such an occurrence to the older condition of the machine. But without the slightest evidence of any such unusual happening the mere fact that newer models have come into being does not justify the conclusion that the age of the machine played any part in this accident."
As did the court in Theard, we find no merit in this argument. Plaintiff failed to show later models have discontinued this type of decking or that later models would have prevented this injury. On the contrary, DeMarcy testified this nine-inch decking is typical of Otis escalators in the general area of the city.
As to plaintiff's contention that no signs were posted near the entrance of the escalator to warn patrons of the store of possible danger in the use of the escalator, there is no indication, nor does the record reflect that the presence of a sign of this nature would have in any way prevented this accident.
Accordingly, we find no showing of negligence on the part of defendants. This finding makes it unnecessary to consider the question of contributory negligence.
The judgment is affirmed.
Affirmed.
NOTES
[1] See Elder v. Westside Transit Lines, Inc., 271 So.2d 569 (La.App. 4th Cir. 1973).
[2] The deck or decking is the nine-inch extension of the escalator extending from the escalater to the wall, i. e., that part of the escalator along which the handrail moves.
[3] DeMarcy had qualified as an expert in this field in federal and state courts.
[4] A wedge guard is required on the ascending escalator. A possible hazard could exist in the "ascending but not in the descending."