360 So.2d 524 (1978)
Robert J. OTT, Plaintiff-Appellant,
v.
J. C. PENNEY COMPANY et al., Defendants-Appellees.
No. 13564.
Court of Appeal of Louisiana, Second Circuit.
June 5, 1978.
*525 Glen H. Smith, Shreveport, for plaintiff appellant.
Mayer, Smith & Roberts by Walter O. Hunter, Jr., and A. J. Gregory, Jr., Shreveport, for defendants-appellees.
Before BOLIN, HALL and JONES, JJ.
JONES, Judge.
Plaintiff appeals a judgment denying him damages resulting from his shoe being caught in an escalator in the J. C. Penney store at Southpark Mall in Shreveport. We reverse and award plaintiff damages for the value of his shoes.
On June 16, 1977, while shopping in the Penney store, plaintiff was departing the descending escalator at the bottom step, and as he attempted to take his last step from the escalator, the heel of his right shoe was caught and lodged in the escalator at a point where the tread step proceeds into and through the comb plate. Plaintiff, age 18, had to remove his foot from his shoe before he could move off the escalator. He then turned, faced the escalator and with his hand succeeded in withdrawing his shoe from its lodged position between the tread step and teeth of the comb plate.
An examination of the shoe reveals that from the center of the back of the heel for a distance of 2½ inches along the right rear extremity of the heel, a substantial chunk was taken from the heel of the shoe which appeared to be constructed of very firm, hard, rubberized material.
The issue is, was plaintiff's shoe caught in the escalator solely because of the negligence of defendant J. C. Penney Company?
In Vallette v. Maison Blanche Company, 29 So.2d 528 (La.App., Orl. 1947), it was held the duty owed to a passenger by the operator of an escalator was similar to the duty owed to a passenger of an elevator which was similar to the duty owed to a passenger by a common carrier. The court there quoted with approval the following language from Ross v. Sisters of Charity of Incarnate Word, 141 La. 601, 75 So. 425:
"`While the owner of a passenger elevator operated in a business building for carrying passengers up and down may not be a carrier of passengers in the sense that he is bound to serve the public, yet his duty as to protecting the passengers in his elevator from danger is the same as that applicable for the carrier of passengers by other means, and he is bound to do all that human care, vigilance, and foresight can reasonably suggest under the circumstances, and, in view of the character of the mode of conveyance adopted, to guard against accidents and injuries resulting therefrom; and a failure in this respect will constitute negligence rendering him liable. He owes the same duty to those who by invitation, express or implied, are transported in the cars of such elevator, to exercise the highest care, in view of the character of the mode of conveyance adopted, as to the safety of the car and all appliances. * * *'"
Vallette, pp. 530, 531 *526 Because a patron of a store can have no knowledge as to the cause of malfunction in the operation of an escalator, the court concluded the doctrine of res ipsa loquitur is applicable to a case where an accident occurs upon an escalator which would normally not occur when due care has been exercised. Under the evidentiary rule of res ipsa loquitur the proof of the accident under these circumstances creates a prima facie case of negligence and the burden then shifts to defendant to show an absence of negligence on his part. Where the doctrine is applicable, a plaintiff is relieved of proving anything more than that an unusual occurrence took place and the injury resulted.
The court in Vallette denied plaintiff's recovery even though she established she had an accidental fall upon an escalator from which she sustained injuries. The court reasoned although the doctrine of res ipsa loquitur can be applicable to escalator accidents, it first must be established the accident was due to an unusual occurrence. The plaintiff in Vallette, immediately following the accident, had given a statement that she recalled nothing unusual about the function of the escalator that brought about her fall. The court for this reason discounted her testimony at trial that the fall occurred because of a sudden jerk or jolt in the function of the escalator. The court found plaintiff failed to establish her fall was caused by anything other than loss of balance precipitated by her own peculiar physical infirmities. Plaintiff's effort to rely upon res ipsa was denied because of her inability to establish her accident was one which normally would not have occurred except for an unusual function in the escalator.
In Theard v. Travelers Insurance Company, 208 So.2d 413 (La.App., 4th Cir., 1968, writ denied), a small child fell on an escalator and cut his finger. The court denied plaintiff's claim because of his failure to establish negligence in the operation of the escalator. Plaintiff was denied use of res ipsa to establish a prima facie case of negligence for the reason plaintiff failed to show the cause of the child's fall was related to an unusual occurrence in the operation of the escalator.
In Cannon v. Holmes, 274 So.2d 799 (La. App., 4th Cir. 1973, writ denied), the court reiterated the duty of an escalator operator to be identical with that of the operator of an elevator:
"* * * [H]is duty as to protecting the passengers in his elevator from danger is the same as that applicable for the carrier of passengers by other means, and he is bound to do all that human care, vigilance and foresight can reasonably suggest under the circumstances, * * *." (Emphasis added by the author) Id. page 801.
The court denied recovery to plaintiff who broke her wrist when her hand became wedged between the descending hand rail on the escalator and a wall adjacent to the escalator. The court disallowed use of res ipsa because she failed to establish there was any unusual occurrence in the function of the escalator which precipitated breaking her wrist.
In Tarantino v. City Stores Company (Maison Blanche Division), 278 So.2d 149 (La. App., 4th Cir. 1973, writ denied La., 281 So.2d 741), a three year old child was riding the descending escalator in Maison Blanche. Upon arriving at the last step on the escalator she fell and the back of her right hand became lodged between the tread plate and the teeth of the comb plate of the escalator causing multiple lacerations. There was no evidence that any malfunction in the escalator caused the child to fall. The court, however, applied the doctrine of res ipsa because the evidence established a hand or finger could not possibly be caught between the comb plate and the tread plate if they were properly meshed. The court reasoned because the child's fingers and hand had been injured by becoming lodged between the tread plate and the comb plate, an accident had been proven which would not have normally occurred had the escalator been functioning properly, and therefore the doctrine of res ipsa applied. Proof of the accident under these circumstances created *527 a prima facie case of negligence shifting the burden of proof to defendant to establish proper maintenance of the escalator. Westinghouse Electric Corporation, who had the maintenance contract on the escalator, failed to establish an explanation which could account for the accident other than improper maintenance, and for this reason it was liable for damages sustained by plaintiffs.
At the conclusion of plaintiff's evidence, which proved his shoe had been caught in the escalator, defendant moved for a directed verdict, citing C.C.P. Art. 1810; Cannon v. Holmes, supra; Vallette v. Maison Blanche Company, supra. Defendant urged dismissal of plaintiff's suit because he failed to establish an unusual occurrence in the operation of the escalator which would allow res ipsa to be applied, and because he failed to otherwise establish negligence in maintenance of the escalator. The trial judge overruled the motion for directed verdict but at the conclusion of the trial on December 16, stated he was impressed with the authorities cited by defendant on the motion for directed verdict, and he believed there had been no malfunction of the escalator established in this case:
"I've stated as a fact, however, there's been no evidence whatever of any malfunction in this machinery. There's been no evidence whatever of any unusual occurrence. No evidence whatever other than in some form or other this plaintiff's right heel, right rear heel, in some manner got caught up in part of this machinery." (Emphasis ours).
The trial court, after making these statements, gave plaintiff an opportunity to file a brief. On December 23 the trial judge rendered judgment rejecting plaintiff's demands. The only reasons for his judgment are those given by him at the conclusion of the trial.
The escalator was installed in 1975 and from 1500 to 2500 people used the escalator in a normal business day. The evidence establishes none of the several hundred thousand people who had used this escalator had their shoe caught between the comb plate and tread plate as they departed the escalator.
The fact that the escalator caught and held plaintiff's shoe at this site is an unusual occurrence which would not have happened had the escalator been functioning properly. Because of this unusual occurrence in the operation of the escalator res ipsa loquitur applies in this case. When plaintiff proved his accident, this established a prima facie case of negligence against defendant, J. C. Penney Company.
Defendant's personnel manager attempted to explain the accident by speculating plaintiff "failed to pick his foot up and the step coming down caught a chunk of his crepe sole." The explanation of the accident offered by the maintenance mechanic was upon first inquiry:
"This I don't know because I was not there; I have no idea how the shoe could get in there."
And upon questioning he too speculated:
"The only way that the shoe could get caught in the comb plate would be for him sliding his foot over the comb plate.". . . "Well, the crepe sole will compress into the comb plate."
The explanation given by these two defense witnesses was premised upon the heel of plaintiff's shoe being constructed of a soft crepe-like material that would press down between the segments of the tread plate and the teeth of the comb plate as they meshed together. An examination of plaintiff's shoe, which is in evidence, establishes the heel is rather large and constructed of extremely hard, firm rubberized material. No doubt the bottom surface of the shoes of many thousands of people who have used this escalator have been constructed of much softer and more pliable material than that found in plaintiff's shoes and the end of the escalator has been stepped upon many thousands of times in every manner possible, yet no similar instance has ever been reported. Under these circumstances the testimony of defendant's escalator mechanic that he found no defect in the escalator when he checked it two *528 weeks before the accident and two days afterwards is insufficient to rebut the presumption of negligence created by the occurrence of the accident. Two and one-half inches of the surface of the heel of plaintiff's shoe would not have caught between the tread segments and the comb plate teeth as they meshed together had the escalator been functioning in a normal manner.
There is no evidence of any negligence on the part of plaintiff which contributed to the accident.
Plaintiff alleged he sustained personal injuries, suffered mental anguish, embarrassment and humiliation as a result of the accident. The record contains no proof of damage sustained by plaintiff other than the damage to the heel of his right shoe. Plaintiff paid $27.98 for this pair of shoes one month before the accident.
We award judgment to plaintiff, Robert J. Ott, and against J. C. Penney Company and Liberty Mutual Insurance Company in the amount of $27.98, plus legal interest from September 8, 1977, and all costs of court.
Reversed and rendered.