SCHOTT, Judge.
This suit arose out of an accident which occurred on February 21, 1976, in which plaintiff’s three and one-half year old child, James, was injured while riding the escalator at the Maison Blanche store in the Lake Forest Plaza in New Orleans. Defendants were City Stores Company, the owner of the store, its insurer, Travelers Insurance Company, Otis Elevator Company, which had constructed the elevator and was under *1289 contract with Maison Blanche to maintain it, and its insurer, Commercial Union Insurance Companies. City Stores and Travelers filed a third-party demand against Otis and Commercial seeking indemnification. From a judgment in favor of plaintiff and against City Stores and Travelers, but dismissing the main demand of plaintiff as well as the third-party demand of City Stores and Travelers against Otis and Commercial, City Stores and Travelers have appealed. Plaintiff answered the appeal, seeking recovery against Otis and Commercial along with City Stores and Travelers.
We are favored with findings of fact by the trial judge which for the most part are supported by the evidence. He found that the plaintiff, his wife and their two minor children were on the escalator traveling from the second floor to the first floor prior to the accident. Plaintiff was standing ahead of his wife with his son on the same step to his left when the child’s left foot got caught in the space between the moving stair tread of the escalator and the side panel or skirt. The child was wearing soft rubber shoes at the time and the left shoe with a cut along the front side in the area of the great toe is in evidence and demonstrates how the child sustained the injury. While these findings are supported by the evidence, the trial judge also said the following:
“The father was asked to explain how this accident happened. He said he could not, that all he knew was that the child was not misbehaving and that they were just standing on the escalator, minding their own business. Suddenly, he was aware of the fact that the three and one-half year old’s left foot was caught in the side of the escalator. He picked the child up, saw the torn tennis shoe and blood. . . . ”
Plaintiff testified that as he was coming down the escalator it started “shaking like an earthquake” so he held on tightly to his son, and looking down he saw a flash of light underneath the escalator and that the escalator opened up as it vibrated. Then suddenly all of this unusual activity in the escalator discontinued and he discovered that his son was injured. He did say at one point that he saw the child’s foot between the side of the escalator and the steps.
Mrs. Marquez also testified that she felt the escalator shaking “like an earthquake” and upon reaching the next floor found that James had been injured.
Considering that the findings of the trial judge are silent as to the testimony of plaintiff and his wife that the escalator shook like an earthquake and that there was a flash of light under the steps of the escalator, it seems that he did not find this testimony convincing. The technical witnesses called by defendants during the course of the trial said it was impossible for the escalator to have shaken or for any light to appear under the steps. The escalator was routinely serviced a few days after this incident and there was no indication whatsoever of any defect in its operation which surely would have to have been obvious had the escalator malfunctioned in the manner plaintiff and his wife said it did.
The trial judge’s findings continue as follows:
“There are no safety switches or devices on this escalator to stop it in the event anything gets caught in its sides, except at the very top and bottom. This accident happened about midway up the escalator. Those safety switches are really there for the protection of the equipment itself as distinguished from the protection of the customers. The Otis Elevator expert could not explain why a ridge, a strip or a guard could not have been put on the stair tread to prevent soft rubber objects from getting into the open clearances. There is a sign at the bottom of the escalator (plaintiffs had not reached it yet) which warned against bare feet, etc. But there are no warnings against tennis shoes, soft rubber footwear, etc. Further, there is nothing at all in evidence to even suggest that there are any safety switches or other devices for the protection of customers using this escalator.”
*1290 The trial judge then concluded that plaintiff was entitled to a judgment against defendant, City Stores, and its insurer, but he dismissed the third-party demand by them against Otis and its insurer. He reasoned that City Stores relied in its third-party demand exclusively on the maintenance and service contract with Otis, but no negligence was shown in the performance by Otis of this contract. His findings continued:
“It is to be noted that City Stores did NOT sue Otis Elevator in a products liability suit. There is no issue before this Court in this case of faulty design or sale of unsafe equipment. If there was, this Court would have no trouble in finding this escalator to be defective in design and unsafe for customers’ use and indemnifying City Stores. But as previously indicated, no such issues have been pleaded or presented. City Stores has hung its hat on its service and maintenance contract with Otis and has alleged that Otis was a joint tortfeasor (alternately) because it did not properly service or maintain the escalator . . . .”
Considering first the question of the liability of City Stores to plaintiff, it is difficult to reconcile this conclusion with the findings of the trial judge. Otis constructed and installed the escalator in the store. The absence of safety switches or devices to stop the escalator in the event that an object gets caught, and the absence of a ridge, strip or guard to prevent soft rubber objects from getting caught in the open clearance between the stairs and the side panel tend to show that Otis, as installer, rather than City Stores was liable. The absence of a sign to warn against tennis shoes along with bare feet on the escalator is also of greater significance against Otis than against City Stores. There is no evidence to suggest that the absence of such safety switches or devices, ridge, strip or guard, or warnings created risks of harm which were reasonably foreseeable by City Stores. Furthermore, with respect to the safety switches or devices there is no evidence to show how they would have prevented this particular accident from occurring.
In Cannon v. Holmes, 274 So.2d 799 (La. App. 4th Cir. 1973), writ denied, 277 So.2d 677, this court considered the liability of the store owner for an injury sustained by a passenger on an escalator. We held that defendant was charged with a high degree of care but that the burden was on the plaintiff to prove negligence on the part of the defendant except in the situation where there was proof of an unusual occurrence or defect in the mechanism or operation of the escalator, in which case, the burden would shift to defendant to exculpate itself. We followed Vallette v. Maison Blanche Co., 29 So.2d 528 (La.App.Orl.1947). Having rejected the testimony, as we are certain the trial court did, that the escalator shook like an earthquake and there was a flash of light under the steps of the escalator, we have no factual basis for the application of the Vallette case to the instant case. We reach the same result as we did in the Cannon case, namely, that this accident could not have been anticipated by City Stores even with the exercise of all human care, vigilance and foresight reasonably suggested under the circumstances.
This case is readily distinguishable from Tarantino v. City Stores Co. (Maison Blanche Div.), 278 So.2d 149 (La.App. 4th Cir. 1973), writ den. 281 So.2d 741, in which the plaintiff recovered for injuries sustained by a three year old child who fell on a descending escalator and got her hand caught in the escalator’s tooth comb plate. Recovery was allowed in that case because an inference arose from the evidence that the accident occurred because of improper maintenance which made it possible for the tooth comb plate to become improperly aligned.
A more difficult issue in this case is the question of City Stores’ strict liability under LSA-C.C. Art. 2317, which provides as follows:
“We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or *1291 of the things which we have in our custody. This, however, is to be understood with the following modifications.”
In Loescher v. Parr, 324 So.2d 441 (La. 1975), the Supreme Court interpreted this article to provide a basis of strict liability on the owner of a defective thing independently of the “modifications” in Arts. 2318-2324.
In Leaber v. Jolley Elevator Corporation, 354 So.2d 746 (La.App. 4th Cir. 1978), writ denied, 356 So.2d 1010, we held that a building owner was liable for injuries caused by its defective elevator but we based our decision not only on Art. 2317 but also on Art. 2322, because the cause was a vice in the original construction of the building. In Adamson v. Westinghouse Electric Corporation, 236 So.2d 556 (La.App. 4th Cir. 1970), we found Art. 2322 applicable in the case where the cause of plaintiff’s injury was a defective electrical switch on an elevator, but the approach seems inconsistent with the decision of the Supreme Court in Davis v. Royal-Globe Insurance Companies, 257 La. 523, 242 So.2d 839 (1971).
Returning to Loescher v. Parr, supra, although strict liability was imposed upon the owner of a thing which caused damage one of the elements which the plaintiff had to prove in the case was the presence of a defect or vice in the thing through which the damage occurred. As to proof of this element, we do not find that our plaintiff carried his burden.
In order for an escalator to function there must be some point between the moving stairs and the stationary frame holding the stairs. The national standards for safe escalator construction provide that this opening may not exceed % of an inch, and in this case the opening was not more than 8/i6 of an inch. While the trial judge stated that it happened before that persons wearing tennis shoes, rain footwear or similar soft rubber shoes got caught in the opening, there is no evidence in the record that such ever happened before. There is evidence that seven months after the accident a piece of a tennis shoe got into this opening and caused the escalator to stop. This does not prove that the opening constituted a defect or vice in the escalator. We know only that plaintiff’s child somehow managed to get his shoe caught and ripped open in this very narrow space. We are inclined to the view that this accident was much in the nature of a freak accident as was plaintiff’s in Cannon v. Holmes, supra.
Pertinent to this discussion is Norberg v. Sears Roebuck & Co., 321 So.2d 795 (La. App. 4th Cir. 1975), in which plaintiff was denied recovery when his four year old son somehow managed to get his hand caught in the handrail guard of the escalator. The child had inserted his hand into a small one-quarter inch opening between the handrail and a guard placed around it. The court commented:
“Considering its location and physical condition, it is very improbable that anyone could accidentally get his hand caught in the opening through any normal or foreseeable use of the escalator.”
In that case the court specifically declined to apply Art. 2321 as interpreted in Holland v. Buckley, 305 So.2d 113 (La.1974). However, the court did not consider Art. 2317 or the Supreme Court’s interpretation of that article in Loescher v. Parr, supra.
We have concluded that to impose liability on City Stores in this case would be to make the store owner the insurer of the safety of its customers and to relieve the plaintiff of any burden of proof whatsoever beyond the occurrence of an accident on the escalator. In effect, we would have to hold that an escalator is an inherently dangerous instrument since it consists of moving parts which present the possibility, however remote, that some freak accident might occur. We simply do not find any basis in the jurisprudence for such a result. Even the Loescher case imposes on plaintiff some burden of proving that there was a defect or vice in the thing, i. e., the escalator belonging to defendant. We cannot conclude that the opening between the stairs and the frame in this case was a defect or vice, like the rotten inside of the tree in the Loescher case.
*1292 The trial court in his reason speculated that a ridge, strip or guard might have prevented the accident. Aside from the fact that there is no evidence as to how such a guard might be constructed it seems clear that there will necessarily remain some space between moving parts and a stationary frame, be it side panel, as in this case, or the edge of a ridge, strip or guard as suggested by the trial judge. Thus, even with these additions to the escalator a child might still find a means of getting his foot caught between the moving and the stationary parts.
We have therefore concluded City Stores and its insurer are not liable to plaintiff under either a tort or a strict liability theory-
The liability of Otis and its insurer is not before us on this appeal. City Stores and its insurer appealed but plaintiff only answered this appeal. He did not take his own appeal. Consequently he cannot secure any relief in this court against Otis and its insurer since the judgment in their favor became final. LSA-C.C.P. Art. 2133. Ogaard v. Wiley, 325 So.2d 642 (La.App. 3rd Cir. 1976), Alleman v. Sentry Ins. Co., 257 So.2d 799 (La.App. 3rd Cir. 1972), writ denied 261 La. 466, 259 So.2d 915.
Accordingly, that portion of the judgment appealed from in favor of plaintiff is reversed and there is judgment in favor of defendants, City Stores Company, d/b/a Maison Blanche, and Travelers Insurance Company, and against plaintiff, Leopoldo C. Marquez, dismissing his suit at his cost.
REVERSED AND RENDERED.