Mrs. Evirda **THOMAS**, Wife of/and Edward Thomas

v.

**WESTINGHOUSE, INC. et al.**

**Civ. A. No. 79–1134.**

United States District Court, E. D. Louisiana.

Jan. 22, 1981.

Louis A. Gerdes, Jr., New Orleans, La., for plaintiffs.

Ernest P. Gieger, Jr., Edward S. Johnson, Asst. U. S. Atty., New Orleans, La., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

BEER, District Judge.

To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any conclusions of law constitute findings of fact, they are so adopted.

### Findings of Fact

1. Plaintiff, Mrs. Evirda Thomas, sued Westinghouse Electric Corporation and the United States for resultant injuries when her ankle was allegedly struck by an elevator door as she entered one of the elevators in the Hale Boggs Federal Building in New Orleans, Louisiana, on April 20, 1978.

2. She had entered the lobby of the Hale Boggs Federal Building, accompanied by a friend who was on another mission. Mrs. Thomas was proceeding to one of the upper floors, intending to keep an appointment with the secretary of Congresswoman Boggs.

3. The Hale Boggs Federal Building is owned and operated by the United States and is maintained by the General Services Administration, an agency of the United States.

4. The elevators in the building, including the one here involved, were designed, installed and maintained by Westinghouse Electric Corporation, and Westinghouse was under contract with the United States to provide periodic service and inspection.

5. It is undisputed that on April 20, Mrs. Thomas experienced an incident which resulted in a fracture to her ankle and that the incident occurred on the first floor, or lobby, of the Hale Boggs Federal Building adjacent to the bank of elevators. However, the cause of the accident and how it took place is disputed.

6. Although the plaintiff has given contradicting testimony as to how and when the accident took place, the report of Dr. Roy Marrero, her attending physician, indicates that she told him she slipped and fell and caught her foot in the elevator in the Hale Boggs Federal Building.

7. At trial, Mrs. Thomas testified that she first entered the Hale Boggs Federal Building and entered an elevator to go up to Mrs. Lindy Boggs' office. That particular elevator stopped for no apparent reason between the fourth and fifth floor. She used the telephone in the elevator to call for help, and the building engineer responded to her call. Thereafter, the elevator became operational, and she returned in it to the first floor, disembarked and proceeded to take another elevator. She testified that when another elevator arrived at the first floor, the sequence of events above described took place.

8. Mr. John Cartwright, Building Manager at the Hale Boggs Federal Building at the time of the accident, testified that on the morning of April 20, he was on duty when one of the elevator alarms went off. He determined that the alarm was coming from one of the elevators numbered five through eight. Since the alarm will stop the elevator, he looked to see which one had stopped and determined it was number five. He went to the floor the elevator was stopped on, but, by this time, it had gone down. He then went down to the first floor, and, when he stepped out of his elevator, he saw Mrs. Thomas lying directly in front of elevator number five, about 18 inches from its entrance.

9. Mr. Ralph Barnes, the Westinghouse employee who was responsible for the maintenance of the elevators in the Hale Boggs Federal Building, was also on duty on the morning of April 20, 1978. He testified at the trial that on that morning he entered the first floor lobby of the Hale Boggs Federal Building at about 11:00. He went to wait for an elevator and at that time there was no elevator in the lobby and no people by the elevators except for a GSA

mechanic. He stood there with his back to elevator number five and talked to the mechanic while waiting for an elevator. While they were talking, Mr. Barnes heard a scream and a thud behind him. He turned around and saw Mrs. Thomas lying on the floor in front of the by then opened elevator number five. The doors of elevator number five were open. There was nobody in the elevator. About a minute later, he saw Mr. Cartwright step out of another elevator and walk over to the area where Mrs. Thomas was lying on the floor.

10. Tests, including a trial run of the elevator, were thereupon performed by Cartwright and Barnes and indicated that elevator number five was functioning normally and without malfunction.

11. I am compelled to the conclusion that Mrs. Thomas' unfortunate accident occurred as she was exiting elevator number five. I conclude that she slipped and fell, twisting her ankle in the process, or twisted her ankle and, thereupon, fell.

### Conclusions of Law

1. The occurrence which is described above was not an "unusual occurrence" within the definition of same set forth in *Ott v. J. C. Penney Co., et al.*, 360 So.2d 524 (La.App. 2nd, 1978).

2. Accordingly, the doctrine of res ipsa loquitur is not applicable.

### ORDER

A judgment should be prepared by counsel for defendant consistent with these findings of fact and conclusions of law and submitted to opposing counsel and, thereafter, to the court.