354 So.2d 746 (1978)
Mrs. Joyce Fascio Leaber, wife of/and Elroy LEABER
v.
JOLLEY ELEVATOR CORPORATION, Hartford Accident & Indemnity Company, Financial Property Development Corporation, and American Motorists Insurance Company.
No. 8728.
Court of Appeal of Louisiana, Fourth Circuit.
January 11, 1978.
Rehearings Denied February 14, 1978.
Writs Refused March 31, 1978.
*747 Lambert J. Hassinger and Richard A. McGuire, New Orleans, for plaintiffs-appellants.
John G. Munoz, Baton Rouge, for defendant-appellee Esco Elevators, Inc.
Ethel Harriet Cohen, Jefferson Heights, for defendants-appellees Jolley Elevator and Hartford.
Hammett, Leake, Hammett, Hulse & Nelson, Michael E. Wanek, New Orleans, for defendants-appellees Financial Property Development Corp. and American Motorists.
Before BOUTALL, SCHOTT and GARSAUD, JJ.
SCHOTT, Judge.
This suit arose out of an incident in which an elevator fell while Mrs. Leaber was a passenger with the result that she was injured.
The office of Mrs. Leaber's employer was located on the third floor of a building owned by Financial Property Development Corporation (FPDC). While on her way to work she boarded the building's only elevator on the ground floor. Upon pressing the button for the third floor the door closed but the elevator did not ascend, whereupon she pressed the button again. The elevator then rose to the second floor but the doors still would not open. She pressed the alarm bell and the button to open the door, but the elevator then fell to the bottom of the elevator shaft. This elevator had been manufactured by Esco Elevators, Inc. and installed by Jolley Elevator Crop. when the building was constructed in 1965. Pursuant to a contract between Jolley and FPDC, the former provided maintenance on the elevator continuously from the time of its installation until the time of the incident sued upon.
The defendants were FPDC and its insurer, American Motorists Insurance Co., Jolley *748 and its insurer, Hartford Accident & Indemnity Co. and Esco. Various third-party demands were filed among these defendants for contribution and indemnity. The case on the main demand was tried to a jury, while the third-party demands were decided by the trial judge. Mrs. Leaber was awarded a judgment for $8,000 against FPDC and its insurer only. All third-party demands were dismissed. From this judgment appeals were taken by Mr. and Mrs. Leaber and by FPDC and its insurer.
At issue on the appeal taken by Mr. and Mrs. Leaber are, 1) liability of the defendants against whom their suit was dismissed, 2) the quantum of damages awarded to Mrs. Leaber for her injuries, and 3) the failure of the jury to award Mr. Leaber anything for the medical expenses incurred by him or the community on Mrs. Leaber's behalf. At issue in the appeal by FPDC and its insurer is its own liability and the liability of the co-defendants by way of indemnity and/or contribution.
This elevator was an hydraulic jack type as distinguished from a cable suspended elevator. The car was mounted on a piston which moved vertically in a cylinder buried upright under the ground at the base of the elevator shaft. This cylinder was connected to an oil supply tank situated on the roof of the building. When the elevator was on the ground floor and was activated this started a pump which sent the oil from the tank into the cylinder and pushed the piston up with the result that the elevator ascended. When the elevator was on one of the upper floors and the down signal was given the oil was released from the cylinder and the elevator descended driven by the force of gravity being exerted against the oil, which was returned to the reservoir tank.
According to Mrs. Leaber, the elevator had come to a stop when the second floor signal light appeared on the inside of the car. This would mean that the car was then located at least halfway between the first and second floors when it fell. Mrs. Leaber described the fall as a rapid free fall, so that the car came to rest on two springs on the floor of the pit at the bottom of the elevator shaft. As a result, the floor of the elevator was one or two feet lower than the surface of the first floor, and Mrs. Leaber had to crawl up and out of the elevator after the incident.
It was established that the cause of the elevator's failure was a leak of the oil from the cylinder underground. Apparently, the pump was able to force enough oil into the cylinder for the elevator to rise to a point approaching the second floor, but as the oil leaked from the cylinder the car descended and this descent was more rapid than would normally result from the release of the oil back into the reservoir under the elevator's normal operating conditions.
The leak was caused by the process of electrolysis, a natural phenomenon whereby some point in the wall of the cylinder because of its contact with the soil surrounding it became sufficiently deteriorated to open a hole in the cylinder permitting the oil to escape into the surrounding soil.
At the outset, our task is to assess liability to Mrs. Leaber on the part of FPDC as the owner of the building and elevator, Jolley as the building owner's elevator maintenance contractor, and Esco as the manufacturer of the elevator.

LIABILITY OF FPDC
We have concluded that the concept of liability without fault applies to the facts of this case under LSA-C.C. Art. 2317 as interpreted by the Supreme Court in Loescher v. Parr, 324 So.2d 441 (La.1976). Art. 2317 provides:
"We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications." (Emphasis supplied)
One of the "modifications" is provided by Art. 2322 as follows:
"The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair *749 it, or when it is the result of a vice in its original construction." (Emphasis supplied)
As will be discussed in greater detail later in the opinion the process of electrolysis is a phenomenon which, at the time of the construction of this building, was a known possibility for which there was no known preventive. Thus, it was built into the building itself when it was constructed so that it surely qualified as a vice in the original construction of the building.
The hydraulic cylinder buried thirty feet underground in the early stages of the building's construction must surely be a component of the building. This cylinder's wall deteriorated to the extent that the oil seeped into the surrounding soil with the result that the elevator fell out of control down the shaft.
In Davis v. Royal Globe Insurance Companies, 257 La. 523, 242 So.2d 839 (1971), the court held that the "ruin" contemplated by Art. 2322 "has reference to the actual fall or collapse of a building or one of its components," and declined to apply the article to a condition wherein paint was flaking and dropping from a building's ceiling. The court reasoned in part that "to satisfy the meaning of `ruin' as used in Article 2322 the fall or collapse must involve a more or less substantial component of the structure."
In Adamson v. Westinghouse Electric Corporation, 236 So.2d 556 (La.App. 4th Cir. 1970) this court held that Art. 2322 applied to the situation where there was a malfunction of the electrical and/or mechanical features controlling the closing of an elevator door allowing plaintiff to recover from the building owner for injuries she sustained. While it is difficult to harmonize the liberal interpretation given to the word "ruin" in the Adamson case with the stricter interpretation given in the Davis case, we have concluded that the failure of the elevator in the instant case is within the stricter definition of the word "ruin." This was not merely a failure in a switch or connection as in the Adamson case, or something superficial like the paint flakes in the Davis case. On the contrary, it was a failure in one of the building's original components installed when the building was constructed and reasonably expected to hold up as well as any other underground components of the building, like the foundations. Thus, we have concluded that the position of the judgment holding FPDC liable to plaintiff should be affirmed.

LIABILITY OF JOLLEY
When this building was constructed Jolley installed the elevator. There is no evidence that the initial installation was in any way faulty. On the contrary, we can infer from the testimony that the elevator was installed in accordance with the manufacturer's specifications and in a workmanlike manner. Following the owner's occupancy of the building, it entered into a maintenance contract with Jolley, under which Jolley would inspect the elevator and all of its equipment and provide regular maintenance on the machinery with the following exception:
"The Contractor will not be required to maintain in any manner whatsoever, power switches and feeders to controllers; cabs; cab and hoistway doors and gates, door astragal strips; hoistway door frames and sills; oil-hydraulic jack casings and underground pipe connections. However, the Contractor will be required to maintain all operating accessories of cab and hoistway doors and gates and keep them in good adjustment." (Emphasis supplied)
Because of this exception Jolley cannot be said to responsible to plaintiff because it was the failure of the hydraulic jack casing due to electrolysis which caused the accident. Thus, the remaining question on liability to plaintiff is that of Esco.

LIABILITY OF ESCO AS THE MANUFACTURER OF THE ELEVATOR
In Weber v. Fidelity & Casualty Insurance Co. of New York, 259 La. 599, 250 So.2d 754 (1971), the Court held that a manufacturer of a product which involved the risk of injury to the user is liable for an *750 injury caused by a defect in the design, composition or manufacture of the article if the injury might reasonably have been anticipated, that the plaintiff has the burden of proof that the product was unreasonably dangerous to normal use, and that plaintiff's injuries were caused by reason of the defect.
It was established that electrolysis is a well known problem to Esco. Two mechanics employed by Jolley with a combined experience of 25 years testified that they had seen at least 25 cases where hydraulic casings had ruptured due to electrolysis. Despite the fact that precautions can be taken to minimize the risk or retard the process, modern technology does not provide any certain method of preventing the process. In 1965 when this installation was made the hydraulic cylinder was "tape coated" in order to retard the process, and in 1970 a method was devised of constructing a double wall on the cylinders to retard the process or minimize the consequences, but even this was unavailable in 1965. Thus, it was established that there was an inherent defect in this type of elevator.
The next question is whether plaintiff's resulting injury might reasonably have been anticipated by Esco. Its engineer testified that electrolysis was not considered a safety hazard because when the process reached the point of a leak in the cylinder the loss of oil would be a slow seepage allowing only a slow unintended descent by the car. In effect, he would not admit of the possibility that the oil would all suddenly run out of the cylinder and cause a rapid free fall for the car.
There was an issue in the case with respect to the rapidity of Mrs. Leaber's descent. Although she testified that it was quite rapid there was no structural damage to the car or the buffer springs. The fact that the elevator was able to ascend to some point between the first and second floor indicates that some oil was left in the system at the beginning of Mrs. Leaber's ride and it seems unlikely that a hole in the casing suddenly opened at this point to permit the oil to rush out and provide the circumstances for a rapid descent.
Nevertheless the jury's award to Mrs. Leaber constitutes a factual determination that she suffered some injury as a result of this fall and the facts of the case show that the elevator was out of control to the extent that it did not come to rest until it made contact with those buffer springs past the ground floor. The modest amount of the award might be interpreted as a sign that the jury did not believe that there was a rapid free fall but that the fall was sufficient to produce a very frightening experience for Mrs. Leaber with mental, as well as physical, pain and suffering.
From these facts we have concluded that Esco might reasonably have anticipated such relatively minor injuries resulting from the defect in its elevator.
Our conclusion is bolstered by the fact despite this known risk Esco gave no warning of such to FPDC whatsoever. It would seem anomalous to hold FPDC liable to Mrs. Leaber on a theory of strict liability because of a condition unknown to FPDC but well known to Esco and at the same time exonerate Esco.
No warning was placed on the elevator itself as to the phenomenon of electrolysis and its attendant effects. The only method of checking the oil supply in the system was to go on the roof and visually inspect the reservoir tank, but there were no gauges or warning devices of any kind which might readily warn users or owners that the oil supply was low indicating that electrolysis had taken place. We have thus concluded that Esco and its insurer are liable to plaintiffs along with FPDC and its insurer, and the judgment must be amended accordingly.

QUANTUM OF DAMAGES AWARDED TO MRS. LEABER
The jury awarded Mrs. Leaber $8,000 for her damages and she contends that this is inadequate for her claimed injuries.
She testified that while the elevator fell she was thrown about in the car and after she crawled out of the elevator she was *751 quite distraught and shaken up. She was taken to the hospital for emergency treatment, and saw her physician, an orthopedic surgeon, three days thereafter. He testified that Mrs. Leaber was suffering before the accident from Paget's disease which weakens the bones. He diagnosed an aggravation of this condition by means of a contusion in her left shoulder and a cervical strain. He prescribed some medication and advised her to rest her arm. Three days later he gave her an injection of cortisone in her shoulder to alleviate pain, and in June, because of her complaints of neck pain, physical therapy was prescribed. A course of physical therapy was given to her twelve times between June 27 and July 24. Although she was better on August 20 she came back in October complaining of her shoulder and was given deep therapy by way of ultrasound. He considered her as recovered by that time.
In addition to these injuries, and more importantly, from plaintiff's point of view she claims that she suffered a phobic neurosis consisting of a fear of elevators as a result of this accident. She testified that until the time of the trial in November, 1976, she had never taken an elevator since the day of her accident, even to the extent of walking eight flights of stairs in order to visit her husband while he was hospitalized on one occasion. She testified as to great inconvenience and embarrassment she suffers because of this phobia. She saw a psychiatrist, a Dr. Sanders, for the first time in April, 1976, and he testified that she at first presented a fear in thinking about elevator riding as well as one associated with the physical riding of elevators itself. After a course of some twelve treatments in which he tried hypnosis she had gotten over her problem as far as thinking about elevators but still had the fear of elevators themselves. He characterized her condition as a phobic neurosis for which no cure could be effected.
On the other hand, defendants produced a psychiatrist, Dr. Carlos, who characterized her situation as a free choice on her part that she would never ride in an elevator again and that psychiatric treatment would necessarily require a choice on her part that she would try to get back into elevators. He had seen Mrs. Leaber in May and October, 1976, and stated that she was asymptomatic from a psychiatric standpoint. She was eating well, she had not lost interests, she was in good spirits and she had no symptoms of anxiety or depression on the first examination. She simply had a fear of riding in an elevator, but this was not a psychiatric condition.
We are not convinced that there was any abuse of discretion on the part of the jury in setting this award. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1977). The jury was properly instructed with respect to quantum and there is no basis for substituting our judgment for the jury's.

FAILURE OF THE JURY TO AWARD ANY RECOVERY TO PLAINTIFF ELROY LEABER
Mrs. Leaber's husband was a plaintiff in his own right seeking reimbursement for the special medical expenses he incurred in connection with Mrs. Leaber's injuries. The verdict of the jury made a specific award of $8,000 to Mrs. Joyce Fascio Leaber, wife of Elroy Leaber, and the judgment was in her favor pursuant to that verdict. In effect, no recovery was given to Mr. Leaber despite the fact that he as head and master of the community was the proper party to bring the claim for the medical expenses incurred by her, and he did in fact sue for such damages. Charles v. Sewerage & Water Board, 331 So.2d 216 (La.App. 4th Cir. 1976). It cannot be said that any part of the $8,000 belongs to Mr. Leaber because it was awarded to her, so that we must conclude that Mr. Leaber was not allowed to recover that which he was entitled as a matter of law to recover. Therefore, the judgment must likewise be amended to allow recovery to Mr. Leaber in the sum of $813, consisting of $540 for Dr. Sanders, $144 for physical therapy treatments, and $129 for Dr. Rodriguez.

*752 FPDC'S CLAIM FOR INDEMNITY
From the foregoing it follows that FPDC and Esco are liable in solido to plaintiffs, so that we are confronted with the same question as the court was in Truxillo v. Gentilly Medical Building, Inc., 225 So.2d 488 (La. App. 4th Cir. 1969), i. e., is FPDC limited to contribution or is it entitled to indemnity?
The court in Truxillo awarded indemnity to the building owner against the janitorial company for liability to an invitee on the theory that the janitorial company's negligence caused injury to the building owner, namely, the building owner's being liable on theoretical grounds. The same reasoning applies to the instant case. FPDC's liability to plaintiff is predicated on liability without fault. Its being cast in judgment is an injury caused by the negligence of Esco for which it is entitled to indemnity.
Accordingly, that portion of the judgment dismissing plaintiff's suit against Esco Elevators, Inc. is reversed. In addition, the judgment on the main demand is amended. That part of the judgment dismissing the third party demand of Financial Property Development Corporation and American Motorists Insurance Company is reversed.
Accordingly, there is judgment in favor of plaintiff, Mrs. Joyce Fascio Leaber, wife of Elroy Leaber, in the sum of $8,000.00, and in favor of Elroy Leaber in the sum of $813.00, both with legal interest from date of judicial demand until paid and for all costs of these proceedings against Financial Property Development Corporation, American Motorists Insurance Company and Esco Elevators, Inc. in solido.
There is judgment in favor of Financial Property Development Corporation and American Motorists Insurance Company against Esco Elevators, Inc. in full indemnity for the amount owed by Financial Property Development Corporation and American Motorists Insurance Company to plaintiffs.
There is judgment in favor of Jolley Elevator Corporation and Hartford Accident & Indemnity Company, dismissing all claims against them.
AFFIRMED IN PART, AMENDED, AND REVERSED IN PART.