616 So.2d 1366 (1993)
Vernon DUCOTE, et ux, Plaintiffs-Appellees,
v.
COMMERCIAL UNION INSURANCE CO., et al., Defendants-Appellants.
No. 92-431.
Court of Appeal of Louisiana, Third Circuit.
April 7, 1993.
*1367 Thomas Walker Lewis, New Orleans, Ringgold Hynson Luke, Bunkie, and Ralph T. Rabalais, New Orleans, for Vernon Ducote, et ux.
Terry Beth Deffes, Thomas Edward Loehn, New Orleans, and DeWitt T. Methvin, Jr., Alexandria, for Commercial Union Ins. Co., et al.
*1368 Before STOKER, THIBODEAUX and SAUNDERS, JJ.
THIBODEAUX, Judge.
Third Party defendants, Felix Armand, Jr. and State Farm Mutual Automobile Insurance Company, appeal an adverse judgment in favor of third party plaintiffs, Sernadia Robinson, the town of Bunkie, and Commercial Union Insurance Company. The judgment found appellants fifty percent at fault for damages suffered by the original plaintiffs, who were no longer part of the suit at the time of trial, and ordered them to pay half the damage amount to appellees, representing their virile portion as solidary obligors. For the following reasons, we amend and affirm in part, reverse in part and render.

FACTS
This suit arises out of an accident occurring in the town of Bunkie, Louisiana, in the early morning hours of May 28, 1989. Three vehicles were involved in the accident. An ambulance, driven by Robinson, owned by Bunkie, and insured by Commercial Union, was traveling north on Highway 29 and approaching its intersection with Lyles Lane. At this same time, Armand was also in the northbound lane of Highway 29, attempting to make a left turn onto Lyles Lane. Principal plaintiffs in this matter, Charline Ducote, the driver, and her husband and passenger, Vernon Ducote, were in the southbound lane. As Robinson approached the intersection, she sought to pass the left-turning Armand on the left. A collision occurred with Robinson's ambulance rebounding off the Armand vehicle, crossing the southbound lane, and striking the Ducote vehicle.
The Ducotes filed suit on June 16, 1989, naming Robinson and Commercial Union as defendants. Defendants answered and filed a third party demand naming Armand and State Farm as third party defendants, and asking for indemnification or, alternatively, a determination of solidary liability and comparative fault. Plaintiffs amended their petition to add Bunkie as a defendant and Bunkie asserted its own third party demand, adopting the claims of Robinson and Commercial Union. Armand and State Farm filed answers denying the third party claims. On March 3, 1991, plaintiffs again amended their petition asserting a claim against Armand and State Farm.
On May 24, 1991, a compromise agreement was reached between the Ducotes and Robinson, Bunkie and Commercial Union. The agreement purported to release appellees and assign whatever remaining rights principal plaintiffs had against appellants to appellees. On June 6, 1991, a motion to dismiss, substitute and realign parties was filed. The motion represented that the principal plaintiffs wished to dismiss all claims against appellees and have appellees realigned as party plaintiffs for the purpose of recovering amounts paid to settle the claim. The trial judge signed an order dismissing the claims against appellees and aligned them as plaintiffs to prosecute their subrogation and assignment of rights.
Appellants filed a peremptory exception of no right of action. They claimed the compromise dismissed any interest appellees had in the suit and left them with no right to claim indemnity or contribution, and that the assignment of rights was invalid. A hearing was held and the trial judge overruled the exception. He did grant a motion in limine filed by appellees to prevent appellants from introducing the settlement agreement into evidence at trial. Appellants applied for writs and, on October 9, 1991, the morning the trial was set to begin, they were denied by this court.
The trial lasted three days. The town of Bunkie's claim was tried by the bench and all others by a jury. Upon completion, the jury found Robinson and Armand each fifty percent at fault. It set damages at $575,000.00 for Charline Ducote and zero for Vernon Ducote. The trial judge adopted the findings of the jury and held Bunkie liable for fifty percent of the damages.
Judgment was signed on December 12, 1991 in favor of Robinson, Bunkie and Commercial Union for $575,000.00the amount of damages assessed by the jury *1369 reduced by fifty percent, representing the percentage of Robinson's comparative fault. The defendants' motion for judgment notwithstanding the verdict was denied. The trial court did amend the judgment, however, by limiting the solidary liability of Armand and State Farm to $100,000.00 which is the limit of Armand's policy with State Farm.
From the foregoing judgments, the following appeal was taken. Appellants asserted eight assignments of error. A few of the assigned errors were not briefed and are considered abandoned under Uniform RulesCourts of Appeal Rule 2-12.4. Appellants framed the assignments into six issues which we have, in turn, condensed into four.
ISSUES
I. Whether appellees, as settling tortfeasors, have any right of action for contribution against non-settling appellants, either through the assignment or the third party demand.
II. Whether appellees have established a prima facie case of liability in their favor against appellees.
III. Whether appellants should have been allowed to introduce evidence of the settlement agreement at trial and to prove original plaintiffs had no further interest in the proceedings.
IV. Whether the trial court erred in assessing fifty percent fault to Armand.

LAW & ANALYSIS

A. Right of Action
In order to expedite this discussion, we will initially dispose of the argument that the judgment against appellants was based on a valid assignment of rights from plaintiffs to appellees. Appellees argue that, pursuant to their release, plaintiffs transferred all remaining rights to appellants to pursue plaintiffs' claim against appellants. Taken literally, this means plaintiffs transferred their right to assert their cause of action for personal injury damages to appellees. Such an assignment is clearly prohibited by the law and cannot be the basis for the judgment in favor of appellees.
As our brethren on the First Circuit stated in Gilboy v. American Tobacco Co., 540 So.2d 391, at 393 (La.App. 1st Cir.1989):
The law has been well settled in this state for many years that a transfer of a personal injury cause of action during the lifetime of the injured party is not permitted because of the intensely personal nature of such actions. (Citations omitted).
Thus, this cause of action based on a personal injury claim may not be the subject of a conventional subrogation to be assigned to a paying solidary obligor, and contribution may not be sought by that means. We should note that the case of Keith v. Comco Insurance Co., 574 So.2d 1270 (La.App. 2d Cir.1991), writ denied, 577 So.2d 16 (La.1991), was cited for the proposition that a cause of action could be assigned pursuant to a compromise between solidary obligors and the obligee. We can easily distinguish Keith because the cause of action assigned in that case was contractual in nature, arising out of an insurer's failure to meet a condition of its policy. In this case, we are faced with a strictly personal right and any assignment of that right is null and void.
Because we find the assignment is invalid, we must address whether or not the settlement agreement gave rise to legal subrogation. In doing so, we first consider solidary liability. LSA-C.C. art. 1794 states:
An obligation is solidary for the obligors when each obligor is liable for the whole performance. A performance rendered by one of the solidary obligors relieves the others of liability toward the obligee.
If appellants and appellees are solidarily liable, then each would owe the whole debt arising from the injuries they caused plaintiffs. As between each other, the obligation is set forth by LSA-C.C. art. 1804. The article states in pertinent part:
Among solidary obligors, each is liable for his virile portion.... If the obligation arises from an offense or quasi-offense, *1370 a virile portion is proportionate to the fault of each obligor.
A solidary obligor who has rendered the whole performance, though subrogated to the right of the obligee, may claim from the other obligors no more than the virile portion of each.

* * * * * *
One way for a solidary obligor who pays the full debt owed to the obligee to recover the virile shares of the other obligors is to proceed according to LSA-C.C. art. 1805. That article states:
A party sued on an obligation that would be solidary if it exists may seek to enforce contribution against any solidary co-obligor by making him a third party defendant according to the rules of procedure, whether or not that third party has been initially sued, and whether the party seeking to enforce contribution admits or denies liability on the obligation alleged by plaintiff.
When appellees were sued by plaintiffs, they filed an answer and a third party demand. The third party demand raised a claim for indemnification or, alternatively, contribution through solidary liability. The third party demand under article 1805 is the method by which appellees sought to enforce contribution.
We turn now to the question of whether the settlement gave rise to legal subrogation and, by virtue of the third party demand and their solidary liability, whether appellees had a right to seek contribution. The answer to this question lies in the settlement agreement. It must give rise to legal subrogation or appellees had no rights to assert against appellants.
LSA-C.C. art. 1829 provides for subrogation by law, stating in pertinent part:
Subrogation takes place by operation of law:
* * * * * *
(3) In favor of an obligor who pays a debt he owes with others or for others and who has recourse against those others as a result of the payment;
* * * * * *
Comment (c) to the article states that the obligor who pays is legally subrogated only if "he brings an action against the others as a result of payment."
In order for appellees to be legally subrogated to the rights of plaintiffs, the settlement must have been for the entire debt and not just to satisfy appellees portionan event which, if proved true, would extinguish appellees' claim for contribution. Determining if the whole debt was extinguished is made difficult by the ambiguous language of the settlement agreement.
The title of the contract of settlement is "Receipt and Release and Subrogation Agreement." For a sum of $450,000.00, Vernon and Charline Ducote specifically released all claims against Robinson, Bunkie and Commercial Union. However, the agreement language is broad enough to release more than just the named parties.
The settlement states that plaintiffs are releasing Robinson, Bunkie, Commercial Union and:
[T]heir respective ... indemnitors or any other entities not specifically named but connected with them in any way from any and all claims ... or other expenses of any nature whatsoever connected with or resulting from, either directly or indirectly, a certain incident occurring on or about May 29, 1989 ...
The foregoing language can be construed to mean that all parties involved in the matter were released. Consideration must also be given to the settlement language which states appellees "specifically reserve their rights to pursue and maintain their cause of action for indemnity and/or contribution," and that language which purports to assign the plaintiffs' cause of action, before an understanding of the agreement's intent is obtained.
The intent of the parties to the agreement is to settle the entire obligation and have appellees seek contribution from appellants. Their intentions were muddled by the overcautious phrasing of the drafters, but implicit in the agreement is the plaintiffs' desire to be free of any further participation in the suit. Evidence of this desire is their willingness to assign their *1371 cause of action. It indicates that plaintiffs wanted out and appellees wanted assurance, albeit incorrectly, that they could recover something from appellants.
Other evidence is appellees' reassertion of a claim for indemnification or contribution, and their citation of Morris v. Kospelich, 218 So.2d 316 (La.1969), as authority. Morris held that a joint tort-feasor could enter into a compromise with the injured party for the whole debt without the knowledge or consent of his co-tort-feasors, and then pursue contribution from the other obligors. The parties to the agreement cited this case as authority for settling the whole claim without consultation with, or permission from, appellants and for reasserting their claim for indemnification or contribution. We believe that the settlement agreement extinguished the whole debt, excused plaintiffs from further participation, and conferred the right to appellees, through legal subrogation, to pursue its claims against appellants.
Under Morris, supra, and LSA-C.C. art. 1805, appellees settled their claim and sought contribution by way of their third party demand. The trial judge signed an order realigning the parties so that appellees were in the original plaintiffs' proverbial shoes. This order was not necessary. The third party demand had been filed and, under legal subrogation, operation of law placed appellees in the original plaintiffs' position.
Although the proper action was brought to recover contribution, the amount of recovery itself was improper. LSA-C.C. art. 1830 states:
When subrogation takes place by operation of law, the new obligee may recover from the obligor only to the extent of the performance rendered to the original obligee. The new obligee may not recover more by invoking conventional subrogation. (Emphasis added).
In our view, the $450,000.00 paid to plaintiffs represents the "performance rendered" and is the amount on which appellants owe their virile share.
It was error for the trial judge to grant judgment in favor of appellees in the amount awarded at trial representing plaintiffs' damages. Quantum should not have been an issue at the trial, only percentages of fault for the purpose of determining a party's virile portion. Unfortunately, appellants were cast in judgment in an amount greater than the actual performance rendered by the settling solidary obligor, appellees. As a result, we reverse the trial judge's award of damages.

B. Proof of Obligation
Appellants contend there is nothing in the record to indicate they owe appellees anything. This contention is without merit. The proof is in the third party demand, the settlement agreementwhich is in the recordand the judgment holding them fifty percent at fault. While the judgment should not have held appellants liable for the jury damage award, it did determine their solidary liability and their virile share. The contribution claim was raised and judgment should have been properly rendered to reflect the claim. However, the fact the judgment was for an improper amount does not excuse appellants from liability, particularly where there is ample proof a debt is owed.

C. Evidence of Settlement
Appellants assert error by the trial judge for failing to allow them to introduce evidence that plaintiffs had settled their claim and were no longer parties to the suit. LSA-C.E. art. 413 strictly prohibits the introduction of an amount paid in settlement unless for the purpose of proving failure to settle. Under that article, there is no question that that part of the settlement agreement was properly excluded.
The trial judge also excluded any evidence regarding the settlement, including the fact that the plaintiffs were no longer parties to the suit. He also allowed counsel for appellees to tell the jury he represented plaintiffs' interests in the trial. Appellants claim the facts were misrepresented to the jury and a fair jury trial was not obtained.
Under LSA-C.Civ.P. art. 1631, the trial judge has the power "... to control the *1372 proceedings at the trial, so that justice is done." LSA-C.E. arts. 408 and 409 limit the introduction of evidence concerning compromise agreements at trial. Under those provisions, evidence of payment of expenses or losses, or circumstances surrounding compromise negotiations are inadmissible to prove liability or to mitigate, reduce or avoid liability. It may be admitted "solely for another purpose."
LSA-C.E. art. 403 states that even relevant evidence may be excluded if its probative value is outweighed by its prejudicial effect, or if it confuses or misleads the jury. The trial judge in his hearing on the motion in limine stated he was not going to inform the jury of the compromise because it would "taint" them on the issue of negligence. Appellants offer no viable argument as to the purpose such evidence would have served at the trial, other than to imply liability on the part of appellees. Nor did they offer proof that informing the jury that plaintiffs were no longer party to the suit prejudiced them in some way. Considering the importance of a definitive determination of percentages of fault, we cannot say the trial judge abused his discretion in excluding the evidence.

D. Percentage of Fault
The determination of fault was crucial because it represents appellants' virile share. Appellants argue fifty percent fault is an excessive quantification of their negligent actions. We believe the assessment logically arose from the extra duty, placed on both a left-turning driver and the driver of an emergency vehicle, to drive with regard to the safety of other motorists. This duty is codified for emergency vehicle drivers in LSA-R.S. 32:24 and mandates caution due to the nature of the job. For left-turning motorists, the duty stems from a jurisprudential rule that he or she must exercise a high degree of care. Kaplan v. Lloyds Insurance Co., 479 So.2d 961 (La.App. 3d Cir.1985).
Our review of the record reveals both parties failed to meet their standard of care. Under the driving conditions at the time, each should have been more aware of the inherent dangers of their action. We cannot say the finding of fifty percent fault was clearly wrong and under Rosell v. ESCO, 549 So.2d 840 (La.1989), we will not disturb the decision of the fact finders. The judgment finding appellees fifty percent at fault and appellants fifty percent at fault is affirmed.

E. The Judgment
As stated earlier, we hold the judgment granting a damage award for $575,000.00 to be in error. Under LSA-C.Civ.P. art. 2164, we "shall render any judgment which is just, legal, and proper upon the record on appeal." By this authority, we render judgment for contribution in favor of Sernadia Robinson, the town of Bunkie and Commercial Union Insurance Company in the amount of $225,000.00, plus legal interest from the date of judicial demand, against Felix Armand, Jr. and his insurer, State Farm Mutual Automobile Insurance Company. This amount represents their virile share of the $450,000.00 compromise agreement with plaintiffs. We recognize the amended judgment rendered by the trial judge limiting State Farm's liability to $100,000.00, reflecting their policy limits, and hereby limit recovery from them for contribution to that amount.
Appellees called to our attention the awkward wording of the judgment regarding apportionment of fault. The wording makes it appear a finding that Robinson and Commercial Union were fifty percent at fault, Armand and State Farm were fifty percent at fault, and Bunkie was fifty percent at fault. We recognize the mathematical impossibility of this implication and hereby amend the judgment to show that Robinson, Bunkie and Commercial Union are together fifty percent at fault and Armand and State Farm fifty percent at fault.

CONCLUSION
For the foregoing reasons, we reverse the trial court award of damages in the amount of $575,000.00 to Sernadia Robinson, town of Bunkie and Commercial Union Insurance Company, reduced by fifty percent for their comparative fault. We render judgment in their favor for $225,000.00, against Felix Armand, Jr. and State Farm, *1373 representing their virile share of fifty percent of the compromise with Vernon and Charline Ducote. We recognize the amended judgment of the trial court, and limit recovery from State Farm to their policy limits of $100,000.00.
We amend the judgment to show Robinson, Bunkie and Commercial Union together are fifty percent at fault and Armand and State Farm also fifty percent at fault. The apportionment of fault by the trial court is affirmed as amended.
AMENDED AND AFFIRMED IN PART; REVERSED IN PART AND RENDERED.