**Mildred H. CUTRER, Steven R. Cutrer, individually and as natural tutors of Wesley Cutrer**

v.

**GULF STATES UTILITIES COMPANY.**

**Civil Action No. 94–449–B.**

United States District Court, M.D. Louisiana.

July 5, 1996.

Fred A. Blanche, III, Baton Rouge, LA, Elwood C. Stevens, Jr., Kleinpeter, Schwartzberg & Stevens, L.L.P., Morgan City, LA, for Mildred H. Cutrer, Steven H. Cutrer.

L. Richard Westerburg, Jr., John A. Braymer, Gulf States Utilities Co., Baton Rouge, LA, for Gulf States Utilities Co.

James Rodney Chastain, Jr., Douglas K. Williams, Breazeale, Sachse & Wilson, Baton Rouge, LA, for Vanguard Underwriters Ins. Co., Angelina Pirello, Succession of Jasper Pirello.

## RULING ON THIRD PARTY DEFEN-
## DANT'S MOTION FOR SUM-
## MARY JUDGMENT

POLOZOLA, District Judge.

This matter is before the Court on a motion for summary judgment filed by the third party defendants. For the reasons stated herein, the motion is denied in part and granted in part.

## PROCEDURAL AND FACTUAL BACKGROUND

The plaintiffs originally filed this suit in the 19th Judicial District Court, Parish of East Baton Rouge, State of Louisiana to recover damages for injuries sustained by their son, Wesley Cutrer. The plaintiffs claim that Wesley was injured when he contacted a power line owned and operated by Gulf States Utility Company ("GSU") while climbing a tree located on the property owned by the Jasper Pirello family. GSU timely removed the suit to this Court.[1] Thereafter, GSU filed a third party demand against Angela Pirello, the Succession of Jasper Pirello and Vanguard Underwriters Insurance Company ("the Pirellos"), claiming they are joint tortfeasors and seeking to recover in contribution or indemnity.

The parties appeared at a conference with this Court at which time the plaintiffs settled their claims with GSU for $90,000.[2] The third party defendants participated in this conference but did not pay any of the settlement proceeds. It was the Court's belief at that time that the only issue remaining in this suit was whether GSU could recover all or part of the settlement proceeds from the Pirello family.[3] The plaintiffs and GSU filed a joint motion to dismiss with prejudice plaintiffs' suit against GSU reserving to GSU its third party demand for contribution and indemnity against the Pirellos. The court signed this order on March 7, 1996, and the matter was set for trial. It is for these reasons and the reasons set forth in footnote 3 that the Court is somewhat surprised at the arguments which the Pirellos now make in their motion for summary judgment. The Pirellos contend that GSU has no third party claim to assert because the settlement executed by GSU and the plaintiffs was only as to the plaintiffs' claims against GSU. The Pirellos further contend that there is no evidence that Gulf States settled the Cutrers' claim against the Pirellos in order to support its claim for contribution nor did GSU secure any subrogation or assignment of the plaintiffs' rights against the Pirellos.[4] Finally, the Pirellos contend that GSU's indemnity claim is without merit because GSU's liability was not merely technical or constructive, but was "premised on active, primary or original fault."[5]

## ANALYSIS

The Court will first decide whether GSU has a valid claim for contribution under the facts of the case and Louisiana law. Under the law of Louisiana, a cotortfeasor may enter into a compromise with the plaintiff without the knowledge, consent or concurrence of the other tortfeasor and may then recover his virile share from the nonsettling tortfeasor.[6] The issue before the Court is whether the settlement agreement between GSU and the Cutrers gave rise to legal sub-

---

1. The court has subject matter jurisdiction under 28 U.S.C. § 1332.

2. See Minute Entry, *Cutrer v. Gulf States Utilities*, No. 94–449 (M.D.La. Jan. 22, 1996).

3. It is for this reason that the Court is surprised at some of the claims asserted by third party defendants in their motion for summary judgment. It was the Court's belief then and now that all of the parties believed that it was in the best interest of all of the parties to settle plaintiffs' claim and reserve until the trial whether GSU's third party claim for contribution and/or indemnity had any merit. The Court also believed the parties stipulated to the amount of settlement; therefore, the Court believed that it would not be necessary to determine the reasonableness of the settlement at the trial.

4. The Pirellos basically contend that any cause of action claiming that they were responsible for Wesley Cutrer's accident and injuries remains in the hands of the plaintiffs.

5. See Mem. in Supp. Mot. For Summ. J.

6. *Morris v. Kospelich*, 253 La. 413, 218 So.2d 316 (1969). *See also Ducote v. Commercial Union Ins. Co.*, 616 So.2d 1366, 1370–71 (La.App. 3d Cir.), *writ denied*, 620 So.2d 877 (1993).

rogation such that GSU has a right to seek contribution from the Pirellos.[7]

█ In order for GSU to be legally subrogated to the rights of plaintiffs, the settlement must have been for the entire debt and not just GSU's portion.[8] To determine if the whole debt was settled, the court must look to the language of the settlement agreement. The agreement states: "claimants ... hereby FULLY AND FINALLY RELEASES, ACQUITS AND FOREVER DISCHARGES the said defendant, as well as its respective agents, employees, employers, partners, legal representatives, insurers, attorneys, heirs, executors, administrators, successors or assigns, who might in any way be claimed to be legally responsible, directly or indirectly, for any liability or responsibility whatsoever arising from, through or caused by the aforesaid occurrence, as well as all claims, demands, suits, or causes of action, for all property damage, personal injury, mental anguish ... and all other damages whatsoever, under any theory of recovery ... and all other theories of recovery, which in any manner, may have arose or may be asserted as a result of the occurrence referred to above, as well as any consequences thereof."

The Court finds that the language in the settlement agreement discharges "all claims, demands, suits, or causes of action" clearly establishes that GSU was settling the entire obligation arising from the April 17, 1993, accident involving Wesley Cutrer.[9] Simply put, the language of the settlement agreement, the judgment of dismissal, the Court's decision to set a trial date, and the language of the pretrial order clearly evidence an intent on the part of the plaintiffs, GSU and third party defendants to settle all of plaintiffs' claims and causes of action, and to reserve to GSU the right to seek contribution and/or indemnity. Thus, this Court finds that legal subrogation took place when GSU and the Cutrers executed the settlement agreement and GSU sought to enforce its claim for contribution against the third party defendants.[10]

█ It is not necessary that GSU "secure" any subrogation or assignment of the plaintiffs' rights. Subrogation took place by operation of law when GSU settled the entire debt. Furthermore, plaintiffs could not assign their rights on a cause of action based on a personal injury claim, as these rights are strictly personal. Any attempt to assign such rights is invalid.[11]

In summary, the Court finds that GSU may pursue any claim for contribution it may have against the Pirellos under the facts of this case.[12] Thus, the third party defendants' motion for summary judgment is denied.[13]

The third party defendants also seek to dismiss the indemnity claim. For reasons which follow, the Court finds that third party defendants' motion for summary judgment

---

7. *See* La. Civ.Code art. 1804.

8. La. Civ.Code art. 1804; *Ducote,* 616 So.2d at 1370.

9. While the Court is not certain, the Court believes that the settlement agreements were structured the way they were because GSU agreed to fund the settlement and reserve its rights to recover all or portion of the settlement payment from the Pirellos.

10. In support of their position, the third party defendants cite the Fifth Circuit case of *Diggs v. Hood,* 772 F.2d 190 (5th Cir.1985). This Court agrees with GSU, which argues that reliance on this case is misplaced. In *Diggs,* the plaintiff had specifically reserved his rights against the nonsettling tortfeasor. The court's analysis of whether the released tortfeasor had paid the joint tortfeasor's debt was necessary because the plaintiffs had reserved its rights against the non-settling tortfeasor. It is not appropriate to apply that analysis to this situation where there was no reservation by the plaintiff against the nonsettling tortfeasor or where the plaintiffs did not name the other tortfeasor.

11. *See Ducote,* 616 So.2d at 1369.

12. Because the Court finds that the whole obligation was paid by GSU, trial on allocation of fault only, not on quantum, is necessary so that the virile portions of GSU and the Pirellos may be determined. *See* La. Civ.Code art. 1804.

13. The Court's finding that GSU may pursue its claim for contribution should not be taken as a finding that GSU is entitled to contribution under the facts of this case. The Court must hear the evidence on the liability, if any, of the third party defendants before the Court can determine this fact.

seeking dismissal of the indemnity claim must be granted.

The general rule in Louisiana is that a tortfeasor has the right to seek contribution but has no right of indemnity against a co-tortfeasor.[14] However, where the

> actual fault o[r] the proximate cause of injury is attributable to one of the parties and the other is only technically or constructively at fault, from failure or omission of some legal duty, the general rule [of contribution] will not apply and indemnity may be had against the one primarily responsible for the act which caused the damage.[15]

The Cutrers claimed in their main demand against GSU that GSU was responsible for the accident and injuries because it failed to: (1) properly maintain its servitude; (2) trim or cut back the oak tree through which the high-powered transmission line ran; and, (3) insulate the line or post warning signs. The issue the Court must decide is whether these actions or inactions on the part of GSU can be considered merely passive or technical fault. The "classic case of passive negligence occurs only when one joint tortfeasor creates a danger that the other (passive) tortfeasor merely fails to discover or remedy."[16] For example, courts have found instances of passive or technical fault where employers were found liable on a theory of *respondeat superior* for the negligence of employees and building owners were found liable for a vice in the construction of a building merely because he failed to discover it.[17] If, however, the one seeking indemnity is actively negligent, indemnity is not permitted.[18] Indemnity is "never applicable where both parties are actually in the wrong," but only where the "actual fault is attributed [to another]."[19]

The allegations against GSU do not fall within the categories that have been found to amount to merely passive or technical fault. The facts now before the Court are similar to the facts set forth in *Ducre v. Executive Officers of Halter Marine, Inc.*,[20] wherein the Fifth Circuit Court of Appeals rejected the indemnity claim. GSU's defense that the Pirellos did not let GSU on their property in order to allow it to do the work necessary to maintain its servitude does not change the analysis. Plaintiffs' theories of recovery against GSU are all based on allegations of active fault on the part of GSU. Thus, as a matter of fact and law, summary judgment in favor of the third party defendants on the indemnity claim is proper.

Therefore:

**IT IS ORDERED** that the third party defendants' motion for summary judgment is **DENIED** on the contribution claim and **GRANTED** on the indemnity claim.

---

**14.** *Ducre v. Executive Officers of Halter Marine, Inc.*, 752 F.2d 976, 984 (5th Cir.1985).

**15.** *Ducre*, 752 F.2d at 984.

**16.** *Ducre*, 752 F.2d at 985.

**17.** *See Truxillo v. Gentilly Medical Bldg., Inc.*, 225 So.2d 488, 494–96 (La.App. 4th Cir.1969); *Leaber v. Jolley Elevator Corp.*, 354 So.2d 746, 748–49 (La.App. 4th Cir.), *writs denied*, 356 So.2d 1004, 1010 (1978).

**18.** *See Ducre*, 752 F.2d at 984–86; *Hunt v. City Stores, Inc.*, 387 So.2d 585, 590 (La.1980).

