| .CARTER, C.J.
This is an appeal from a judgment granting the defendants’ motion for partial summary judgment. The judgment dismissed the plaintiffs legal subrogation claim arising out of payments plaintiff made in settlement of personal injury claims by guest passengers involved in a one-vehicle accident. Plaintiff appeals.
FACTUAL BACKGROUND
On October 9, 1994, Lawrence Lacoste, a Florida resident, was driving a van on Denham Road in East Baton Rouge Parish, heading toward Greenwell Springs Road. Denham Road ends in a T-intersection with Louisiana Highway 37 (Greenwell Springs Road). There were no T-bars or other signs warning that Denham Road ended. There was a stop sign for the Denham Road traffic; however, the sign was allegedly positioned at a 45-degree angle, making it unclear whether it controlled the traffic on Greenwell Springs Road or the traffic on Denham Road.
The van was owned by Mr. Lacoste’s company, ARC Electrical Contractors (ARC), and was insured by plaintiff, Transcontinental Insurance Company (Transcontinental). There were several guest passengers in the van, all of whom •were Florida residents. These guest passengers included Dewey Bardin, Evelyn Bardin, Robyn Barnes (a minor), and Sharon Horn. The group was on its way home to Florida after attending a church revival at a Denham Springs church. Mr. Lacoste’s son served as music minister at the church.
As Mr. Lacoste traveled down Denham Road toward Greenwell Springs Road, he allegedly saw a stop sign turned at a 45-degree angle and slowed. However, as he got closer to this stop sign, he discovered that the stop sign was actually directed at a road coming into Denham Road at a 45- *322 degree angle. Thus, when he saw the stop sign at the intersection of Denham Road and Greenwell Springs Road, which sign was also allegedly positioned at a 45-de-gree angle, he assumed that it controlled traffic on Greenwell Springs Road. Accordingly, he did not slow or stop. By the time he saw that Denham Road ended at Greenwell Springs Road, it was too late to stop. The van left the roadway, injuring several of the guest passengers.
1 ¿Shortly before the one-year anniversary date of the accident, Robyn Barnes’s mother threatened to sue Transcontinental on behalf of her minor daughter. To avoid this litigation, Transcontinental settled the personal injury claim of Robyn Barnes. A receipt and release of Robyn Barnes’s claims was executed on October 2, 1995. Also shortly before the one-year anniversary of the accident, the Bardins served Transcontinental with a complaint in Florida, seeking damages for their injuries sustained in the accident. To avoid litigation, Transcontinental settled the Bardins’ claims, and the Bardins signed a receipt and release of their claims on October 6, 1995. Transcontinental also paid Mr. La-coste’s medical expenses and paid ARC for its property damage. None of these settling parties pursued any further litigation arising out of this accident. Particularly, none of the settling parties filed a suit or claim against the State of Louisiana, through the Department of Transportation and Development (DOTD), or the Parish of East Baton Rouge, through the Department of Public Works (the Parish).
PROCEDURAL BACKGROUND
On October 6, 1995, before the expiration date of the one-year prescriptive period from the date of the accident, Transcontinental filed suit against DOTD and the Parish, alleging that they were “jointly, severally and solidarily liable to ... Transcontinental, for all sums made to or on behalf of ARC ... as a result of property damage and bodily injury sustained in an accident on or about October 9, 1994, in East Baton Rouge Parish, State of Louisiana.” Transcontinental further alleged that the stop sign at the intersection of Denham Road and Greenwell Springs Road was defective, as were the other traffic control devices at that intersection. It alleged that DOTD and the Parish were responsible for erecting and maintaining traffic signs and signals upon Greenwell Springs Road and Denham Road, respectively. It further alleged that DOTD and the Parish’s negligence was “the sole and proximate cause” of Transcontinental’s damages. Transcontinental asserted it was legally subrogated to the rights of ARC to the extent of payments made to settle the claims of the Bardins, Robyn Barnes and Mr. Lacoste. DOTD and the Parish answered the petition, denying liability and pleading the negligence of Mr. Lacoste as the sole cause of the accident.
|fiOn August 20, 1996, this case was consolidated at the trial court level at the request of the Parish with a suit filed earlier by another guest passenger in the van, Sharon Horn and her husband, Ot-mer. Mr. Lacoste, DOTD and the Parish were named as defendants in the Horn suit. In January 1997, Transcontinental settled the Horns’ claims against Mr. La-coste. In mid-January 2000, DOTD and the Parish settled with the Horns. A trial had been previously scheduled for February 15, 2000. After DOTD and the Parish settled the Horns’ claims, the only matter left in the two consolidated suits to be tried was the issue raised between Transcontinental and DOTD and the Parish.
On January 20, 2000, DOTD and the Parish filed a Motion for Partial Summary Judgment asserting that Transcontinental was never subrogated to the rights of the *323 Bardins and Robyn Barnes, and could not therefore assert its action against DOTD and the Parish.[2]
A hearing was held on February 7, after which the trial court rendered partial summary judgment in favor of DOTD and the Parish, dismissing Transcontinental’s legal subrogation claim. The partial summary judgment was certified as a final and ap-pealable judgment by the trial court. Transcontinental appeals and raises four assignments of error.
PROPRIETY OF MOTION FOR SUMMARY JUDGMENT
A motion for summary judgment is a procedural device used to avoid a full-scale trial where there is no genuine factual dispute. Sanders v. Ashland Oil, Inc., 96-1751, p. 5 (La.App. 1st Cir.6/20/97), 696 So.2d 1031, 1034, writ denied, 97-1911 (La.10/31/97), 703 So.2d 29. It should be granted only if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966.
Previously, our cases held that summary judgments were not favored and were to be used cautiously and sparingly. Any doubt was to be resolved against granting the | ¿motion and in favor of a trial on the merits. However, in 1996 the legislature amended LSA-C.C.P. art. 966 to overrule the presumption in favor of trial on the merits. Summary judgments are now favored, and the documents submitted by both parties are to be equally scrutinized. Diamond B Construction Co., Inc. v. Louisiana Department of Transportation and Development, 2000-1583, p. 6 (La.App. 1st Cir.12/22/00), 780 So.2d 439, 443, writ denied, 2001-0246 (La.4/20/01), 790 So.2d 633.
In 1997, by Act No. 483, the legislature again amended LSA-C.C.P. art. 966 to incorporate the federal summary judgment analysis. Under the amended version of LSA-C.C.P. art. 966, the initial burden continues to remain with the mover to show that no genuine issue of material fact exists. If the moving party points out that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action or defense, then the nonmoving party must come forward with factual support sufficient to establish that he will be able to satisfy his evidentia-ry burden of proof at trial. LSA-C.C.P. art. 966C(2). If the nonmoving party fails to do so, there is no genuine issue of material fact, and summary judgment should be granted. LSA-C.C.P. arts. 966 and 967; Diamond B, 780 So.2d at 443.
Appellate courts review summary judgments de novo under the same criteria that govern the trial court’s determination of whether a summary judgment is appropriate. Because it is the applicable substantive law that determines materiality, whether or not a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Calhoun v. Hoffman-La Roche, Inc., 98-2770, p. 5 (La.App. 1st Cir.2/18/00), 768 So.2d 57, 61, writ denied, 2000-1223 (La.6/23/00), 765 So.2d 1041.
SUBROGATION
In its first assignment of error, Transcontinental contends there were disputed *324 issues of material fact whether the alleged subrogors intended to subrogate their claims against the other solidary obligors and whether the insured and the other alleged tortfeasors were solidarily liable. Thus, Transcontinental argues that the trial court erred in granting the motion for partial summary judgment.
[7In its petition, Transcontinental asserted it was legally subrogated to the rights of the Bardins and Robyn Barnes against DOTD and the Parish to recover amounts paid to the Bardins and Robyn Barnes for personal injuries sustained in the subject accident.
Subrogation is the substitution of one person to the rights of another. LSA-C.C. art. 1825. When subrogation results from a person’s performance of the obligation of another, that obligation subsists in favor of the person who performed it, who may avail himself of the action and security of the original obligee against the obligor, but the obligation is extinguished as to the original obligee. An original obligee who has been paid only in part may exercise his rights for the balance of the debt in preference to the new obligee. LSA-C.C. art. 1826. A. Copeland Enterprises, Inc. v. Slidell Memorial Hospital, 94-2011, p. 5 (La.6/30/95), 657 So.2d 1292, 1296.
In other words, subrogation is the legal fiction established by law whereby an obligation, extinguished with regard to the original creditor by payment that he has received from a third person, or from the original debtor but with funds that a third person has provided, is regarded as substituting in favor of this third person. The ■third party, in essence, steps into the shoes of the original debtor and is entitled to assert, in the measure of what he has paid, the rights and actions of the former creditor. Subrogation thus gives an advantage to the third person by assuring him of reimbursement in a way considerably more effective than the personal action that arises from just his act of performing. A. Copeland Enterprises, 657 So.2d at 1296.
In essence, subrogation is a contract between the creditor and the person who renders performance. It is subject to the general rules that govern the proof of obligations. Subrogation may be either conventional or legal. LSA-C.C. art. 1825. It may result from either the agreement of the obligor or the obligee or both with a third person, or directly from the operation of law. Thus, the intention of subrogation is to protect such persons who perform certain acts. A. Copeland Enterprises, 657 So.2d at 1297.
Pursuant to LSA-C.C. art. 1829(3), sub-rogation takes place by operation of law in favor of an obligor who pays a debt he owes with others or for others and who has recourse against those others as a result of the payment. Thus, in order for | sTranscontinental to be legally subrogated to the rights of the Bardins and Robyn Barnes, the settlement must have been for the entire debt and not just to satisfy Transcontinental’s portion. See Ducote v. Commercial Union Insurance Company, 616 So.2d 1366, 1370 (La.App. 3rd Cir. 1993), writ denied, 620 So.2d 877 (La.1993).
Consequently, whether the entire debt owed to the Bardins and Robyn Barnes was paid was a material factual issue. To defeat Transcontinental’s claim, it was incumbent on DOTD and the Parish, as movers for summary judgment, to establish that the entire debt owed to the Bardins and Robyn Barnes was not paid by Transcontinental. If DOTD and the Parish could establish that the entire debt was not paid, the burden would shift to *325 Transcontinental to show that the entire debt was paid.
In their motion for summary judgment, DOTD and the Parish contended that the entire debt was not paid. DOTD and the Parish supported this contention with a copy of the receipt and release executed by the Bardins and the receipt and release executed on behalf of Robyn Barnes. DOTD and the Parish argued that because the receipts and releases did not reference and release any claims the claimants had against DOTD and the Parish, the entire debt owed to the claimants could not have been paid by Transcontinental. However, upon review of the receipts and releases, we find they do not address and thus, are not determinative of, whether the entire debt owed to the Bardins and Robyn Barnes was paid by Transcontinental.
The receipt and release executed by Evelyn Elaine Barnes, on behalf of her minor daughter, Robyn Barnes, provides in pertinent part as follows:
I ... hereby release and forever discharge ... Lacoste, ARC ... and Transcontinental ... of any and all claims, demands, actions, and causes of action for damages, compensation, medical payments, court costs, attorneys fees, penalties, interest, expenses, and loss of any and every kind whatsoever on account of, or in any way growing out of, any and all known and unknown personal injuries and property damages which resulted or may result from an injury sustained by ... Robyn ... Barnes, resulting from an automobile accident which took place on October 9, 1994 in the City of Zachary, Parish of East Baton Rouge, State of Louisiana.
In Cutrer v. Gulf States Utilities Company, 963 F.Supp. 583, 586 (M.D.La.1996), a settling defendant had filed a third party claim for contribution against an alleged joint tortfeasor. The third party defendant filed a motion for summary judgment | contending that there was no third party claim to assert because the settlement was only as to the claimant’s claims against the third party plaintiff. The federal district court determined that the language in the settlement agreement, which language was extremely similar to the language in Robyn Barnes’s receipt and release, evidenced an intent to settle the claimant’s entire debt. Thus, the court denied the motion for summary judgment.
The Bardins’ receipt and release was executed after a formal complaint had been served on ARC. Thus, the language in the receipt and release regarding settlement payments and discharge of claims all referenced ARC and its insurer, Transcontinental, the only defendants named in the complaint. It provided that the payment received discharged “all past, present or future claims, demands, obligations, actions, causes of action, rights, damages, costs, losses of services, expenses and compensation of any nature whatsoever, whether based on tort, contract or other theory of recovery ... including ... any and all known or unknown claims for damages” from the accident as against ARC and Transcontinental. However, DOTD and the Parish were not served with, or named as defendants in the complaint. The receipt and release did not reference or discharge claims against DOTD and the Parish. However, we reject DOTD and the Parish’s argument that this failure means the Bardins were not compensated for all their damages. In sum, the Bar-dins’ receipt and release does not contain a clear expression as to whether the payment compensated the Bardins for all of the damages they sustained in the accident.
It is undisputed that the receipts and releases did not expressly release any claims against DOTD and/or the Parish. *326 However, the pertinent issue is not whether the Bardins and Robyn Barnes released their claims against DOTD and the Parish. Rather, the pertinent issue is whether the Bardins and Robyn Barnes received full compensation for their damages through the payment by Transcontinental. The receipts and releases do not clearly demonstrate or address whether the Bardins and Robyn Barnes were compensated for all their damages by the Transcontinental settlement payments. The issue is simply whether the entire debt was paid. If Transcontinental paid the entire debt due the injured parties, then Transcontinental Imwould be legally subrogated to the claims of the Bardins and Robyn Barnes. If the entire debt owed to the injured parties was not paid by Transcontinental, they do not have a claim for legal subrogation. Therefore, we find that a genuine issue of material fact remains as to whether the Bardins and Robyn Barnes were made whole for their damages through Transcontinental’s payment in settlement of the claims.
Moreover, in the memorandum filed by DOTD and the Parish in support of their motion for summary judgment, they acknowledge that “there is no evidence in any of the releases” that “the settling party paid the entire debt, including the portion owed by the non-settling party.” Thus, by their own admission, the receipts and releases do not address the issue of whether the entire debt was paid by Transcontinental in exchange for the receipts and releases. Accordingly, the burden did not shift to Transcontinental to prove that the entire debt was paid or that such an issue was in dispute.
For these reasons, we find that the trial court erred in granting the motion for summary judgment filed by DOTD and the Parish. There was a genuine issue of material fact as to whether the entire debt was paid, and this precluded the defendants’ entitlement to summary judgment. Because we find that the summary judgment was granted in error, we need not address Transcontinental’s remaining assignments of error.
CONCLUSION
For the reasons set forth in this opinion, the judgment of the trial court granting summary judgment in favor of DOTD and the Parish and dismissing Transcontinental’s claim based on legal subrogation is reversed. This matter is remanded to the trial court for further proceedings. Costs of this appeal in the amount of $3,144.38 are assessed equally between DOTD and the Parish.
REVERSED AND REMANDED.

. DOTD and the Parish did not move for summary judgment on the issue of Transcontinental’s entitlement to recover amounts paid to ARC for property damage. Subsequently, at oral argument, the parties stated that all remaining claims had been settled. Thus, the only issue remaining was the one on appeal.